THE TENEMENT HOUSE DEPARTMENT OF THE CITY OF NEW YORK, Respondent, *v.* KATIE MOESCHEN, Appellant.

SAME, Respondent, *v.* SAME, Appellant.

1. TENEMENT HOUSE ACT — CONSTITUTIONALITY OF PROVISION REQUIRING SCHOOL SINKS TO BE REPLACED BY INDIVIDUAL WATER CLOSETS (L. 1901, CH. 334, § 100, AS AMD. BY L. 1902, CH. 352, § 47). The provision of the "Tenement House Act" (L. 1901, ch. 334, § 100, as amd. by L. 1902, ch. 352, § 47), requiring all school sinks, privy vaults, etc., in existing tenement houses in cities of the first class, to be removed and replaced by individual water closets, is a proper and constitutional exercise of the police power of the state for the protection of the public health.

2. SAME. The fact that the act is applicable only to cities of the first class and to tenement houses only does not offend the provision of the fourteenth amendment of the United States Constitution, which declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws;" nor does the act, by reason of its application to existing buildings, violate the constitutional provisions against taking private property for public use without just compensation.

*Tenement House Dept.* v. *Moeschen,* 89 App. Div. 526; 90 App. Div. 603, affirmed.

(Argued October 11, 1904; decided November 15, 1904.)

APPEAL in the first above-entitled action, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1904, which affirmed a determination of the Appellate Term of said Supreme Court affirming a judgment of the Municipal

Court of the City of New York in favor of plaintiff for a penalty for violation of the Tenement House Act, entered upon a verdict.

Appeal in the second above-entitled action, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 16, 1904, which affirmed an order of Special Term granting a motion for an injunction to enjoin defendant from maintaining a school sink on certain premises in the city of New York, and containing other orders and directions in reference thereto.

In both cases the same question has been certified to this court, to wit: "Is Section 100 of Chapter 334 of the Laws of 1901 of this State constitutional?"

This act is entitled, "An Act in relation to tenement houses in cities of the first class." Short title, "Tenement House Act."

Section 100 is as follows: "In all now existing tenement-houses, all school sinks, privy vaults or other similar receptacles used to receive fecal matter, urine or sewage, shall before January first, nineteen hundred and three, be completely removed and the place where they were located properly disinfected under the direction of the department of health. Such appliances shall be replaced by individual water-closets of durable non-absorbent material, properly sewer connected, and with individual traps, and properly connected flush tanks providing an ample flush of water to thoroughly cleanse the bowl. The seats of the water-closets shall be hinged and attached to the bowl of the closet. Each water-closet shall be located in a compartment completely separated from every other water-closet. The floors of the water-closet compartments shall be water-proof as provided in section ninety-five of this act. Such water-closets may be located in the yard if necessary, and if so, long hopper closets may be used; all traps, flush tanks and pipes shall be protected against the action of frost. There shall be provided at least one water-closet for every two families in every now existing tenement house. Except as in this section otherwise provided such

water-closets and all plumbing in connection therewith shall be in accordance with the ordinances and regulations in relation to plumbing and drainage."

*Louis Marshall, Adolph Bloch* and *William L. Mathot* for appellant.    The school sink on the defendant's premises which she is directed to remove, having been erected pursuant to orders of the board of health of the city of New York and the mandate of the legislature, is property, which the plaintiff is seeking to "take" without instituting condemnation proceedings and awarding compensation to her for the loss suffered and injury done by such removal and incidental destruction.    For that reason the act upon which the plaintiff proceeds offends both the State and Federal Constitutions.    (*People ex rel.* v. *Van de Carr*, 178 N. Y. 425; *Wynehamer* v. *People*, 13 N. Y. 378; *People ex rel.* v. *Otis*, 90 N. Y. 48; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Green*, 85 App. Div. 400; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *Cohen*, 91 App. Div. 89; *N. Y. S. U. Co.* v. *Dept. of Health*, 61 App. Div. 106; 1 Lewis on Em. Domain [2d ed.], §§ 6, 156; *Lake View* v. *R. H. C. Co.*, 70 Ill. 192; *Comm.* v. *P. C. Co.*, 66 Penn. St. 41; *N. O. W. W. Co.* v. *S. T. W. W. Co.*, 14 Fed. Rep. 194.) This legislation is violative of the 14th amendment of the Constitution of the United States, which declares that no state shall "deny to any person within its jurisdiction the equal protection of the laws," since the act is made applicable only to cities of the first class and to tenement houses only, while all citizens of other cities, and all property owners in cities of the first class owning premises other than tenement houses, are free to use school sinks.    (*Matter of Jacobs*, 98 N. Y. 98; *Barbier* v. *Connolly*, 113 U. S. 27; *G. C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Cotting* v. *K. C. S. Co.*, 183 U. S. 79; *Connolly* v. *U. S. P. Co.*, 184 U. S. 540; *Matter of Pell*, 171 N. Y. 48; *People* v. *O. C. R. C. Co.*, 175 N. Y. 84; *Ruhstrat* v. *People*, 185 Ill. 183; *People ex rel.* v. *Van de Carr*, 178 N. Y. 425; *N. Y. S. U. Co.* v. *Dept. of Health*,

61 App. Div. 106.) The exercise of the police power is limited by principles of adequacy, reasonableness and necessity. (*U. S.* v. *D. M., etc., Ry. Co.,* 142 U. S. 510; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *People* v. *Gillson,* 109 N. Y. 389; *People* v. *Budd,* 117 N. Y. 1; *Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; *Smith* v. *Ames,* 169 U. S. 426; *C. Ry. Co.* v. *Minnesota,* 134 U. S. 418; *C. T. Co.* v. *Sanford,* 164 U. S. 578; *Mugler* v. *Kansas,* 123 U. S. 623.) The statute compels the defendant to incur an unreasonable and unwarranted expense, equal almost to her entire equity in the property, in removing that which is not a nuisance and in making alterations and changes, which, in the opinion of the best experts, will put it in a less sanitary condition than at the present time. (*Harris* v. *Thompson,* 9 Barb. 350; *Plant* v. *L. I. R. R. Co.,* 10 Barb. 26; *Williams* v. *N. Y. C. R. R. Co.,* 18 Barb. 222; *Heey* v. *Licht,* 80 N. Y. 579.) It is error to contend that the conceded proposition that school sinks, if not properly flushed, are dangerous to health, justified an exercise of the police power. (*State* v. *Bergen,* 46 N. J. Eq. 173; *Lawton* v. *Steele,* 119 N. Y. 226; *Colon* v. *Lisk,* 153 N. Y. 188; *Bd. of Health* v. *Dassori,* 21 App. Div. 348; *N. Y. S. U. Co.* v. *Health Dept.,* 61 App. Div. 106.)

*John J. Delany, Corporation Counsel* (*Theodore Connoly* of counsel), for respondent. Section 100 of the Tenement House Act tends to promote the public health, and is constitutional. (*People* v. *Draper,* 15 N. Y. 532; *Dartmouth College* v. *Woodward,* 4 Wheat. 625; *Board of Excise* v. *Barrie,* 34 N. Y. 667; *W. W. Mfg. Co.* v. *Shanahan,* 128 N. Y. 345; *People* v. *Budd,* 117 N. Y. 1; 143 U. S. 517; *Atkin* v. *Kansas,* 191 U. S. 207; Wood on Nuisance, § 512; *Wahler* v. *Reinbach,* 76 Ill. 322; *Ross* v. *Bulwer,* 19 N. J. Eq. 294; *Harrington* v. *Bd. of Aldermen,* 20 R. I. 240; *Watertown* v. *Mayo,* 109 Mass. 100; *City of Rochester* v. *West,* 164 N. Y. 510.) The act is not rendered unconstitutional by reason of its application to existing buildings. (*Thorpe* v. *R. R.*

*Co.*, 27 Vt. 140; *Holden* v. *Hardy*, 169 U. S. 366.) The statute in question is not void because it requires the removal of all school sinks, irrespective of their condition. (*Harrington* v. *Bd. of Aldermen*, 20 R. I. 133; *People* v. *Cipperly*, 37 Hun, 324; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Lawton* v. *Steele*, 152 U. S. 133; *Mugler* v. *Kansas*, 123 U. S. 623.) That the school sink ordered to be removed had been constructed in accordance with an order of the then board of health does not make the statute unreasonable as to defendant. (*Stone* v. *Mississippi*, 101 U. S. 814; *Health Department* v. *Rector*, 145 N. Y. 32; *Mugler* v. *Kansas*, 123 U. S. 623; *Fire Dept.* v. *Chapman*, 10 Daly, 377; *Comm.* v. *Roberts*, 155 Mass. 281; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *People* v. *Squire*, 107 N. Y. 593; *A. R. T. Co.* v. *Hess*, 125 N. Y. 641; *W. U. T. Co.* v. *Mayor, etc.*, 38 Fed. Rep. 552; *Lawton* v. *Steele*, 119 N. Y. 226.) If the condition of the defendant's premises is sanitary, that fact does not render the statute unreasonable as to her. (*Fire Dept.* v. *Gilmour*, 149 N. Y. 453; *Powell* v. *Pennsylvania*, 127 U. S. 668; *City of Rochester* v. *West*, 164 N. Y. 510.) The statute does not deprive defendant of any vested rights. (*Blazier* v. *Miller*, 10 Hun, 435; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *A. R. T. Co.* v. *Hess*, 125 N. Y. 641.)

BARTLETT, J.    The defendant is the owner of a tenement house, No. 332 East 39th street, in the city of New York, valued at $16,500.00, in which she has an equity above incumbrances of about $3,500.00.

The defendant was duly served with an order, on the 11th day of April, 1903, by the plaintiff herein, ordering her to remove the school sink from said property and to replace the same by one water closet for every two families in the building, under said section 100. Defendant was also informed in the notice that if she failed to comply with the terms thereof proceedings would be instituted against her according to law.

These premises were occupied by twenty families, aggregating forty-eight persons, more or less.

The defendant having failed and refused to comply with the order, the actions already referred to, for the recovery of the penalty provided by said act and for an injunction respectively, were commenced.

The defense interposed in each case is the unconstitutionality of section 100.

The learned Appellate Division wrote an opinion in the action begun in the Supreme Court for an injunction, and in determining the appeal in the action in the Municipal Court of the city of New York adopted that opinion.

A question is discussed in the briefs on this appeal that the introduction by defendant of testimony and proof was proper. In view of the fact that this testimony and proof were admitted, over the objections and exceptions of the plaintiff, and that no appeal has been taken from such rulings, this question is not before us and we express no opinion in regard to it.

It is well settled in this court and in the Supreme Court of the United States that the constitutionality of a statute may be determined by considering its language and the material facts of which the court can take judicial notice. (*People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569, 578; *Health Department of N. Y.* v. *Rector, etc.*, 145 N. Y. 32, 50; *Powell* v. *Pennsylvania*, 127 U. S. 678, 684, 685; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, 8.)

It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the community at large.

It is a well-recognized principle in the decisions of the state and federal courts that the citizen holds his property subject not only to the exercise of the right of eminent domain by the state, but also subject to the lawful exercise of the police power by the legislature; in the one case property is taken by condemnation and due compensation; in the other the necessary and reasonable expenses and loss of property in making reasonable changes in existing structures, or in erecting additions thereto, are *damnum absque injuria.*

The single question is presented in this case whether the legislation under consideration is a lawful exercise of the police power, imposing upon the citizen only such expenses as are reasonable.

We are of the opinion that, considering the facts in the case, the language of the section under review and the expenses incurred in making the necessary changes required, the legislation is a proper exercise of the police power. There is much important and persuasive evidence of which we are permitted to take judicial notice.

The recent history of legislation on this subject is as follows: In 1884, the tenement house committee, acting under legislative command, submitted a report to the senate February 15th, 1885 (Senate Document No. 36 of 1885), showing the condition of the old privy vaults existing in the city of New York, and recommended "the abolition of all privy vaults in the city limits upon all property contiguous to all streets or avenues where sewers are laid." A law to that effect was passed (Chapter 84 of the Laws of 1887) as an amendment to section 53 of the Consolidation Act. In pursuance of this legislation the board of health abolished the privy vaults, and the owners of tenement houses were ordered to substitute water closets in the house, or hopper closets or school sinks in the yard.

In this report of 1884 the committee said: " School sinks are better than vaults, but water-closets are better than either. Nearly all the inspectors know where water-closets have been introduced in tenement-houses, and they believe that properly located and supervised water-closets are practicable, even in the worst houses."

The governor, in 1900, appointed a committee known as " The Tenement House Commission," in accordance with chapter 279 of the laws of that year, to make a careful examination into the healthfulness of tenement houses in cities of the first class, and to make " such recommendations as it deems wise to enable the best and highest possible condition for tenement-houses in said cities to be attained."

This commission submitted its report to the legislature in February, 1901. At page 149 thereof, after recommending the passage of section 100 of the Tenement House Act, the commission made the following statement :

" These school sinks were in nearly every case found by the commission's sanitary inspectors to be in a horrible condition, and a serious menance to the health of the occupants of such houses and the neighboring houses. From their construction it is very difficult to flush them, and the inspectors found many cases where they had not been flushed for weeks. In summer the stench is intolerable, and, unquestionably, causes a good deal of sickness. Moreover, the school sinks found in nearly all the buildings were in a horrible condition, in some cases simply indescribable. The commission, therefore, recommends that within two years all existing school sinks now used in connection with tenement-houses be removed and proper water-closet accommodations be substituted. The commission has not attempted to specify whether such water-closets shall be placed in the yard or within the tenement-house ; it has left this to the option of the owner. The commissioners realize that in some cases it might be difficult to protect such water-closets from the action of frost if they are located in the yard, but know that in any case they can be located in the house simply by giving up one room to such purpose. Every consideration of the public health demands that this action be taken, and the commission finds, after having estimates made, that the cost will not be so great as to make this measure an undue hardship upon the owners of tenement-houses." This commission submitted a draft of the Tenement House Act, which was afterwards passed by the legislature (Chapter 334 of the Laws of 1901).

These reports to the legislature make it clear that the abolition of the vault in the first instance, and subsequently of the school sink in tenement houses, was an absolute necessity in the due protection of the public health in the city of New York.

In *Health Department of N. Y.* v. *Rector, etc.* (145 N. Y.

at p. 49), Judge PECKHAM uses this language : "That dirt, filth, nastiness in general, are great promoters of disease, that they breed pestilence and contagion, sickness and death, cannot be successfully denied.  There is scarcely a dissent from the general belief on the part of all who have studied the disease that cholera is essentially a filth disease.  The so-called ship fever or jail fever arises from filth ; most diseases are aggravated by it."

The records of the tenement house department of the city of New York show that there are over eighty thousand tenement houses in the city, in only nine thousand of which are there school sinks.  In seventy-one thousand of these houses, therefore, and many of them of the cheapest type, there are water closets and no school sinks.  This fact shows that the necessity of this reform has been generally recognized, and has caused the great majority of tenement houses in the city to adopt the water-closet system as contemplated by the section under consideration.

This court has recently passed upon the constitutionality of "The Public Health Law" (Laws of 1893, ch. 661, § 200, renumbered § 210 by Laws of 1900), which provides that no child or person not vaccinated shall be admitted or received into any of the public schools of the state.  A large portion of the instructive opinion of Judge VANN is apposite to the cases at bar.  (*Matter of Viemeister*, 179 N. Y. 235.)

One of the questions of fact litigated was the expense imposed upon the defendant in making this change of closets.  A witness in behalf of defendant testified that the expense would range from $750 to $2,640, while the witness for the plaintiff placed the outlay at from $800 to $1,750.  This question, however, has been settled against the defendant by the unanimous affirmance of the Appellate Division.

The counsel for defendant argues that the substitution of the new closets for the old would practically destroy the defendant's equity in her property, as it is heavily mortgaged.  While it was proved that the expense involved would not, by a large amount, equal defendant's equity in the premises, it is

obvious that the full market value of the property, and not the value above incumbrances, should be taken into consideration when estimating the reasonableness of the proposed outlay to which defendant is to be subjected.

Another point to be considered in this connection is that a tenement house relieved of the terribly filthy condition disclosed by the existence of these school sinks, and duly equipped with the individual water closet, must experience a marked increase of fee and rental value.

Appellant argues that the school sink on the defendant's premises having been erected in compliance with orders of the board of health some years ago, issued pursuant to a mandate of the legislature, is property which the plaintiff is seeking to take without instituting condemnation proceedings and awarding compensation to her for the loss suffered and injury done by such removal and incidental destruction, and, therefore, offends both the State and Federal Constitutions, which provide that private property shall not be taken for public use without just compensation.  In support of this proposition the learned counsel cites *Wynehamer* v. *People* (13 N. Y. 378, 398); *Matter of Jacobs* (98 N. Y. 98); *People* v. *O'Brien* (111 N. Y. 1), and many other familiar cases, which clearly have no application to the present situation.

We have here an act of the legislature which is, in part, preventive legislation, looking to the preservation of the public health in the future; a system of drainage is attacked, which is highly dangerous, and which should be surrounded by every reasonable safeguard known to science and experts in plumbing.  (*Health Department of N. Y.* v. *Rector, etc.,* 145 N. Y. 32.)

In *Commonwealth* v. *Roberts* (155 Mass. 281, 282) the question of water closets was under consideration.  The court there said : " There can be no doubt that the statute in question is within the constitutional powers of the legislature as a police regulation.  It is an act for the preservation of the public health, and relates to the disposal of one of the most dangerous forms of sewage.  As said by MORTON, J., in *Nick-*

*erson* v. *Boston* (131 Mass. 306, 308): ' It belongs to that class of police regulations to which private rights are held subject, and is founded upon the right of the public to protect itself from nuisances and to preserve the general health. The authority of the legislature to pass laws of this character is too well settled to be questioned.' See, also, *Commonwealth* v. *Intoxicating Liquors* (115 Mass. 153, 155), and cases cited ; *Bancroft* v. *Cambridge* (126 Mass. 438)."

The appellant further insists that this legislation is violative of the fourteenth amendment of the Constitution of the United States, which declares that no state shall " deny to any person within its jurisdiction the equal protection of the laws," since the act is made applicable only to cities of the first class and to tenement houses only, while all citizens of other cities and all property owners in cities of the first class owning premises other than tenement houses are free to use school sinks.

To say that the board of health of the city of New York, in the exercise of the police power, cannot, under legislative sanction, apply different rules and regulations in a city of the first class to the densely populated tenement-house districts than to the well-conducted houses of the more favored classes, is to overlook the controlling facts and the absolute necessity of enforced changes by the exercise of the police power. The fact that the act under consideration relates only to cities of the first class does not offend the constitutional provisions upon which the appellant relies.

It is common procedure for the board of health, in the various cities of the state, to secure such grants of power from the legislature as the necessities of the particular locality may demand. An act necessary for the city of New York might not have the slightest application to Albany or Buffalo.

The appellant makes the further point that the act is rendered unconstitutional by reason of its application to existing buildings.

This contention is clearly unsound under the decision of this court in *Health Department of N. Y.* v. *Rector, etc.* (145 N. Y. 32, 43, 44, 45). Judge PECKHAM dealt with this point as follows :

." Instances are numerous of the passage of laws which entail expense on the part of those who must comply with them and where such expense must be borne by them without any hearing or compensation because of the provisions of the law. (*Thorpe* v. *R. & B. R. Co.*, 27 Vt. 140–152.) One of the late instances of this kind of legislation is to be found in the law regulating manufacturing establishments. (Laws of 1887, chap. 462.) The provisions of that act could not be carried out without the expenditure of a considerable sum by the owners of a then existing factory. Hand rails to stairs, hoisting shafts to be inclosed, automatic doors to elevators, automatic shifters for throwing off belts or pulleys, and fire escapes on the outside of certain factories, all these were required by the legislature from such owner and without any direct compensation to him for such expenditure. Has the legislature no right to enact laws such as this statute regarding factories unless limited to factories to be thereafter built ? Because the factory was already built when the act was passed, was it beyond the legislative power to provide such safeguards to life and health as against all owners of such property unless upon the condition that these expenditures to be incurred should ultimately come out of the public purse ? I think to so hold would be to run counter to the general course of decisions regarding the validity of laws of this character and to mistake the foundation upon which they are placed. (*Coates* v. *Mayor, etc., of N. Y.*, 7 Cowen, 585, 604; Cooley's Const. Lim. [5th ed.] chap. 16, page 706, etc.)

" Any one in a crowded city who desires to erect a building is subject at every turn almost to the exactions of the law in regard to provisions for health, for safety from fire and for other purposes. He is not permitted to build of certain materials within certain districts because though the materials may be inexpensive they are inflammable, and he must build in a certain manner. Theaters and hotels are to be built in accordance with plans to be inspected and approved by the agents of the city ; other public buildings also ; and private dwellings within certain districts are subject to the same supervision,

and in carrying out all these various acts the owner is subjected to an expense much greater than would have been necessary to have completed his building if not compelled to complete it in the manner, of the materials and under the circumstances prescribed by various acts of the legislature. And yet he has never had a hearing in any one of these cases, nor does he receive any compensation for the increased expense of his building, rendered necessary in order to comply with the police regulations. I do not see that the principle is substantially altered where the case is one of an existing building and it is to be subjected to certain alterations for the purpose of rendering it either less exposed to the danger from fires or its occupants more secure from disease. In both cases the object must be within some of the acknowledged purposes of the police power and such purpose must be possible of accomplishment at some reasonable cost, regard being had to all the surrounding circumstances."

We do not deem it necessary to examine in detail other points argued by the appellant, as we are satisfied that the judgment and order appealed from in the respective cases should be affirmed, with costs, and the certified question in each case answered in the affirmative.

We adopt the able opinion of the learned Appellate Division, save that portion of it which discusses the power to introduce testimony and proof at the trial and hearing in the respective cases, the question not being before us, as already stated.

CULLEN, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and WERNER, JJ., concur.

Judgment and order affirmed.