PEOPLE ex rel. COHEN et al. v. BUTLER, Tenement House Com'r.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. MANDAMUS—DEMURRER TO ALTERNATIVE WRIT—ADMISSION BY.
    A demurrer to an alternative writ of mandamus admits all the facts set forth in the writ, but not the conclusions and deductions sought to be drawn therefrom.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 343.]

2. STATUTES—CONSTRUCTION—"AND" AND "OR."
    The words "and" and "or," when used in a statute, are convertible as the sense may require.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 275.
    For other definitions, see Words and Phrases, vol. 1, pp. 385–394; vol. 8, p. 7575; vol. 6, pp. 5002, 5015; vol. 8, p. 7739.]

3. EVIDENCE — JUDICIAL NOTICE — LEGISLATIVE PROCEEDINGS — ASCERTAINING LEGISLATIVE INTENT.
    In seeking to ascertain the legislative intent in the enactment of Tenement House Act, Laws 1901, p. 889, c. 334, amended by Laws 1903, p. 395, c. 179, the Appellate Division may take judicial notice of the report of the commission from which the act emanated.

4. HEALTH—TENEMENT HOUSE ACT—CELLAR ROOMS—"GROUND OUTSIDE OF OR ADJOINING THE SAME."
    Tenement House Act, Laws 1901, p. 910, c. 334, § 91, subd. 2, requires the ceilings of rooms in the basement of a tenement house occupied for living purposes to be at least 4½ feet "above the surface of the street or ground outside of or adjoining the same." *Held*, that the section does not authorize the occupancy for living purposes of cellar rooms whose ceilings are only two feet above the street surface, though they are over seven feet above the surface of an adjoining sunken court; the clause "ground outside of or adjoining the same" being intended to cover the case of a tenement house not abutting upon a street, or standing upon a lot of such conformation that as to some rooms a height of four feet and six inches above the curb level would not equal four feet and six inches above the ground outside of and adjoining the same.

5. SAME—"INNER COURTS."
    Under Tenement House Act, Laws 1901, p. 889, c. 334, § 2, subd. 3, defining an "inner court" to be one not extending to the street or yard, courts sunken 7½ feet below the surface of the street and yard, and inclosed on all sides to the yard and street level, must be treated as inner courts.

**6. SAME.**

Tenement House Act, Laws 1901, p. 905, c. 334, § 67, provides that rooms, excepting bathrooms, etc., shall have at least one window opening upon the street or upon a yard or court, of the dimensions specified in sections 53 to 65 (pages 901–904), and section 61 (page 903) provides that where one side of an inner court is situated on the lot line, the width of such court, measured from the lot line to the opposite wall of the building, for tenement houses 60 feet in height, shall not be less than 12 feet in any one part, etc. *Held*, that the requirements as to dimensions of an inner court cannot be met by joining two inner courts on different lots, each less than the requisite width.

**7. SAME—WATERPROOFING WALLS.**

A waiver by the commissioner of the tenement house department of New York City of waterproofing on the walls of cellar rooms of a tenement house before they were designed for use for living purposes cannot be availed of if they are to be so used.

Appeal from Special Term.

Mandamus proceeding by the people of the state of New York, upon the relation of Abraham Cohen and another, against Edmond J. Butler, commissioner of the tenement house department of New York City. From an interlocutory judgment overruling a demurrer to an alternative writ of mandamus, respondent appeals. Reversed, demurrer sustained, and alternative writ dismissed.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and HOUGHTON, JJ.

John P. O'Brien, for appellant.
Benno Loewy, for respondents.

SCOTT, J. The respondent appeals from an order which overrules his demurrer to an alternative writ of mandamus. The respondent is commissioner of the tenement house department of the city of New York, and the purpose of this proceeding is to compel his approval of plans and specifications for the alteration of certain tenement houses in the city of New York, the alterations consisting in fitting up certain cellar rooms in each house for living purposes, the declared intent being that they shall be occupied by the janitors and their families. The buildings are of recent construction, having been erected since the passage of the tenement house act (chapter 334, p. 889, Laws 1901, amended by chapter 179, p. 395, Laws 1903). As originally planned and erected, other provision was made for the accommodation of the janitors, and the adoption to their use of the cellar rooms is an afterthought, induced, as the alternative writ shows, by the fact that the income from the houses can thereby be increased. The property owned by relators consists of 15 tenement houses on the southerly side of West 140th street, between Seventh and Eighth avenues, and occupying a plot 575 feet in width and 99 feet 11 inches in depth. Through the middle of the block running from Seventh to Eighth avenue is a private way 26 feet in width, whereof one-half consists of the rear of relators' land. This way is created by a covenant which runs with the land for at least 10 years from 1905, and thereafter as to each part of the premises upon which a building is constructed until such building shall be demolished and entirely removed. Each of relators' buildings is 38 feet 4 inches wide in the

front, and runs back at that width for a distance of 28 feet 6 inches. For the remainder of the distance back to the private way, being 58 feet 5 inches, each building is 25 feet 4 inches in width, leaving unbuilt upon each side of each lot a space or court 58 feet 5 inches deep by 6 feet 6 inches in width. The buildings are so constructed that two of these courts come together, leaving between the rear portions of each two buildings an open space, half on one lot and half on the other, 13 feet wide and 58 feet 5 inches deep. The surface of the right of way is at the same level as 140th street and Seventh and Ninth avenues, being at the grade known throughout the tenement house act as the "curb level." The surface of the open courts between the houses is depressed seven feet six inches below the curb level, terminating at the rear end in a stone retaining wall which upholds the right of way, from which iron steps lead down into the courts. In each of the houses there are rooms at the level of the bottom of the depressed court, and having windows opening out upon it. It is these rooms which the relators now desire to adapt for living purposes, and as the commissioner·has refused, for the reason hereinafter stated, to give his approval to the plans and specifications, this proceeding is brought to compel him to do so. No question of discretion is involved; the relators insisting that upon the facts recited in the interlocutory writ, and the exhibits attached to it, they are entitled as a matter of strict legal right to the approval of their plans. The demurrer, of course, admits all the facts set forth in the interlocutory writ, although not the conclusions and deductions sought to be drawn therefrom. The facts are fully stated, and are amplified and illustrated by a number of plans and photographs, and from the facts so alleged the legal rights of the parties can be determined without the necessity of taking evidence.

The first objection which the commissioner makes to the plans, and a decisive one if well taken, is that the ceilings of the rooms are only two feet above the street surface at the curb, whereas they should be four feet six inches above that level. The ceilings of the rooms are nine feet high; but, as the street surface is seven feet higher than the floors of the rooms, the ceilings are only two feet higher than the street level. The buildings were erected since the passage of the present tenement house act (chapter 334, Laws 1901), and therefore the present application is governed by title 1 of chapter 4 of the act. Section 91, subdiv. 2, which relates to rooms in basements constructed, altered, converted, or occupied for living purposes, prescribes that:

"The ceiling of such room shall be at least four feet and six inches above the surface of the street or ground outside of or adjoining the same."

The relators' contention is that the words "surface of the street" and "ground outside of or adjoining the same" are used alternatively, and that the requirements of the statute will be met in the case of the rooms which they desire to convert into dwelling rooms, because their ceilings will be more than four feet and six inches above the surface of the sunken court, which, as it is claimed, is .the "surface of the ground immediately adjoining" the rooms, within the meaning of the statute. Of course, if this be the true construction to be given to the statute, it will be quite possible for the owner of some other building to sink

a court much deeper than seven feet six inches, and the rooms opening upon it will be within the law if their ceilings extend to four feet six inches above the bottom of the well-like court thus created. The defendant, on the other hand, contends that the street level, or, as it is termed in the act, the curb level, is intended as the primary determining factor regulating the height to which the ceilings of basement rooms must extend, and that they must also extend four feet and six inches above the adjoining ground if the building be not built upon a street, or if the conformation of the land be such that a ceiling four feet and six inches in height above the curb level would not be that much above the surface of the ground immediately adjoining. To place this construction upon the statute we are asked to read the subdivision as if the word "and" was used instead of the word "or," so that the subdivision will read:

"The ceiling of such room shall be at least four feet and six inches above the surface of the street and ground outside of or adjoining the same."

The words "and" and "or," when used in a statute, are convertible as the sense may require. The substitution of one for the other is frequently resorted to in the interpretation of statutes when the evident intention of the lawmakers requires it. People ex rel. Municipal Gas Co. v. Rice, 138 N. Y. 151, 33 N. E. 846; Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821. "In the interpretation of statutes the great principle which is to control is the intention of the Legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and, where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter." People ex rel. Wood v. Lacombe, 99 N. Y. 43, 1 N. E. 599; Spencer v. Myers, 150 N. Y. 269, 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675. "In the construction of a law, every part of it must be viewed in connection with the whole, so as to make, if possible, all of its parts harmonious. The intent of the lawmaker is to be sought for. When that is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by the words of any part, but by ascertaining the general purpose of the whole, and by considering the evil which existed calling for the new enactment and the remedy which was sought to be applied." People ex rel. Jackson v. Potter, 47 N. Y. 375. The tenement house act is one of great public importance, designed to effect and enforce much needed reforms in the construction of tenement houses in our cities, and thus to promote the public health, welfare, and morality.

The act of 1901 emanated from a commission appointed by the Governor of the state pursuant to chapter 279, p. 620, Laws 1900, and that commission, with the proposed act, submitted a report which throws much light upon the purpose and the meaning to be attributed to the statute then recommended, and which the Legislature adopted substantially as reported. Of that report we may take judicial notice in seeking to ascertain the intention of the Legislature. Tenement House

Dept. v. Moeschen, 179 N. Y. 325–331, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910. It recommended the passage of section 91 of the act, incorporating therein subdivision 2, now under consideration. With reference to that subdivision, the report said:

"The commission has recommended certain changes in the present law with regard to living rooms to be occupied in basements of future tenement houses. There has been a very strong demand to prohibit entirely the occupation of basement rooms. The commission, however, has not seen its way clear to making so drastic a recommendation. It therefore recommends that in all tenement houses hereafter erected the height of such rooms must be at least 9 feet, and that at least one-half of the height of the room shall be above the curb level; also that the rooms shall be properly ventilated, and that the walls and floors shall be waterproof. * * * Ventilation of basements both supplies the fresh air necessary to carry on the proper functions of life, and carries off the moisture which otherwise would do injury. Experience proves that, while the air will renew itself in basements having ceilings one foot above the street, there is not sufficient volume of it in movement, and every foot added to the height increases the volume of the air in movement. The present provision of the law permitting the occupancy of basements, the ceilings of which are but one foot above the level of the sidewalk, also fails to afford sufficient sunlight to enter the premises."

It is thus made apparent from the report of the commission, as indeed is apparent from the act itself, that the purpose sought to be attained by subdivision 2 of section 91 of the act was to insure the admission to basement apartments of both air and sunshine, and that it was believed that this could be assured in a sufficient degree if the ceilings of the basement rooms were required to extend four feet six inches at least above the curb level, and above the land immediately adjoining such rooms. It is quite obvious that these conditions will not be obtained, to the extent that the Legislature intended, if the construction insisted upon by the relators be accepted. Throughout the act the curb level is taken as the basis for taking measurements for the various details of construction. Thus in section 2, which contains the definition of the terms used in the act, subdivisions 7 and 8 define the words "basement" and "cellar" as those words are used throughout the act, and take the distance below the curb level as the determining factor. "A basement is a story partly, but not more than one-half below the level of the curb." Subdivision 7. "A cellar is a story more than one-half below the level of the curb." Subdivision 8. Under this definition, the rooms which the relators desire to convert into living rooms being concededly more than one-half below the level of the curb are apparently contained in a cellar, notwithstanding the sunken court, and section 91 provides that:

"In tenement houses hereafter erected [as were those of the relator] no room in the cellar shall be constructed or occupied for living purposes."

Taking the act as a whole, therefore, and bearing in mind the evils which it was designed to prevent, we find ourselves unable to accede to the construction contended for by the relators which would go far to nullify the beneficent purposes of the act. We are of the opinion that in using the words, "or ground outside of or adjoining the same," following the words "surface of the ground," the Legislature did not intend to permit the use for living purposes of rooms wholly or more than one-half below the street level, but meant to provide, by way of

greater caution, for the case of a tenement house not abutting upon a street, or standing upon a lot of such conformation that as to some rooms a height of four feet and six inches above the curb level would not equal four feet and six inches above the ground outside of and adjoining the same. It certainly could not have been the intention to permit the act to be evaded by excavating a court for the purpose of creating an artificial surface many feet below the street level. The plans show that in each house there are to be two rooms which adjoin both the right of way, which is at the curb level, and the court, which is seven feet six inches lower. There can be no doubt that as to these rooms at least that level should be selected as the test for the height of the ceilings which will most effectively carry out the intent of the law, and that would be the level of the private way, and not that of the sunken court.

The foregoing considerations are sufficient to dispose of the relators' claim that they are entitled as a matter of right to an approval of the plans. There are some other objections, however. Subdivision 4 of section 91 provides that basement rooms, in order to be occupied for living purposes, shall "have a window or windows opening upon the street, or upon a yard or court." If we may assume that by any construction relators' rooms are basement, and not cellar, rooms, this provision applies to them. Their windows do not open upon a street. A "yard" is defined by section 2, subdiv. 2, of the act, as "an open unoccupied space on the same lot with a tenement house between the extreme rear of the house and the rear line of the lot." Under this definition one-half of the open right of way in the rear of each lot would constitute its "yard." No window of the required size will open upon it. A "court" is defined as "an open unoccupied space, other than a yard, on the same lot with a tenement house." Subdivision 3. The spaces on either side of each house, and upon which the windows open, are within this definition. By the same subdivision courts are divided into "outer courts" and "inner courts"; an "outer" court being one extending to the street or yard, and an "inner" court being one not extending to the street or yard. In one sense the courts of relators' building do extend to the yards, but they are of considerably lower level, and are separated from the yards by a retaining wall seven feet six inches high, and which might have been much higher if the owners had seen fit to excavate more deeply. Taking into consideration the purpose of the careful and minute provisions as to basement rooms, intended to insure a proper supply of air and sunlight, these courts should, up to the level of the yard or right of way, to which height they are entirely inclosed, be considered as inner courts. Above that, where the air and sunlight are unobstructed, they may probably be treated as outer courts. If they are to be considered up to the curb level as inner courts, section 67 of the act applies, which provides that every room, except water-closets and bathrooms, shall have at least one window opening directly upon the street, or upon a yard or court of the dimensions specified in sections 53 to 65 of the act. Section 61 provides that:

"Where one side of an inner court is situated on the lot line, the width of said court measured from the lot line to the opposite wall of the building for

tenement houses 60 feet in height, shall not be less than 12 feet in any one part, and for every 12 feet of increase or fraction thereof, the width must be increased six inches."

The relators' buildings are 69 feet high, and therefore the inner courts are required to be 12 feet and 6 inches wide. The courts attached to each of these houses, measured as provided by section 61, are only six feet six inches wide; and, although in consequence of the manner in which the buildings are planned there is now an actual space of thirteen feet between the rear portions of the buildings, this condition of affairs may not continue. Respecting such courts, the tenement house commission said in its report to the Legislature:

"In regard to inner courts or courts inclosed on all four sides, the commission has sought to provide that such courts shall be of a size sufficient to provide adequate light and ventilation. There has been a decided sentiment in the community against these courts, and the commission has been urged to prohibit them entirely. This, however, would not be expedient, as such courts when of sufficient size are adequate for purposes of light and ventilation. Where such a court is situated on the lot line, the commission has recommended that the minimum width of the court from the lot line to the building shall be 12 feet, and its other least dimension shall be 24 feet; these minima being prescribed for a building 60 feet in height. If the owner of the adjoining property repeats an inner court of similar dimensions on his lot, as he is likely to do, it would give a large court 24 by 24 feet."

It is apparent that the requirements as to the dimensions of an inner court cannot be met by joining two inner courts on different lots, each less than the requisite width. A question is discussed on the briefs as to the necessity for waterproofing the walls of the rooms referred to. Our determination upon the other questions involved renders it unnecessary to discuss this one, further than to say that any waiver of waterproofing which the defendant may have made before it was designed to use the rooms for human habitation cannot be availed of if they are to be so used.

The interlocutory judgment appealed from must be reversed with costs and disbursements, and the demurrer sustained and the alternative writ dismissed, with $50 costs.

PATTERSON, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. HOUGHTON, J., concurs on first ground only.

---

### PEOPLE v. GOLDBERG et al.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. CRIMINAL LAW—EVIDENCE—SUFFICIENCY.

In a trial for violating Pen. Code, § 675, by annoying and interfering with a street car passenger by jostling him, etc., the prosecution's failure to call the passenger as a witness did not require an acquittal.

2. DISORDERLY CONDUCT—INFORMATION—ISSUES.

That the evidence in a trial for violating Pen. Code, § 675, by annoying and interfering with a street car passenger by jostling him, etc., warranted a conviction of an attempt to rob, does not warrant a reversal of a conviction of the offense charged.