Mr. Justice Robb
delivered the opinion of the Court:
This is- an appeal from a judgment upon a verdict for the defendant, Plimpton R. Chase, in an action for damages for personal injuries alleged to have been sustained by the plaintiff, Julia A. Ewing, in stumbling over a step in an aisle of the defendant’s theater, the question here involved being whether sec. 180 of the municipal regulations for the public safety in “theaters and other places of public assembly” in the District of Columbia, adopted April 27, 1902, applies to theaters then existing, and, if so, whether such regulations are constitutional.
the evidence of the plaintiff tended to show that on January 29, 1906, she attended a performance in defendant’s theater, occupying a private box on the first floor, which was reached by a passageway leading from the right-band side aisle of the theater; that at the close of the performance she passed through said passageway to said aisle, turned around, and took bold of the curtain that was banging across the passageway, and, in attempting to draw the curtain aside, that her lady companion might follow, she took a step to one side, the lights in the theater being turned down, and not noticing a step of about 6 inches descent across said aisle, and 6 or 8 inches beyond said passageway, she was thrown by it and injured. There was evidence before the jury of a convincing character to the effect *55 that such a step existed, although the defendant offered evidence tending to show that it did not.
Plaintiff offered in evidence said section, which reads as follows:
“Sec. 180. All changes in the levels of the floors of such buildings, except under stairways, from story to story, and except the necessary steps in galleries and balconies rising toward the exits, shall be made by inclines of no steeper gradient than two in ten within the auditorium, and rising toward the exits, and one in ten for all others.”
The court declined to receive it, and an exception was noted.
The regulations, of which this is a section, were adopted pursuant to the joint resolution of Congress approved February 26, 1892 (27 Stat. at L. 394), declaring all licenses issued to proprietors of theaters and other public places of amusement in this city terminated unless the licensees should, within ten days after notice, comply with such regulations as might be prescribed for the public safety. The 2d section of the resolution empowered the commissioners to make and enforce all such reasonable and usual police regulations in addition to those already made as they might “deem necessary for the protection of the lives, limbs, comfort, health, and quiet of all persons, and the protection of all property in the District of Columbia.” It will be noticed that about ten years elapsed before regulations applying to places of public assembly were adopted, and while these regulations appear to have been inspired by the joint resolution of Congress, it is a matter of common knowledge that the immediate reason for their adaption was the appalling loss of life that had occurred by reason of the failure on the part of proprietors of theaters to adopt proper precautions for the protection of their patrons.
An inspection of the various paragraphs or subdivisions of these regulations, aside from the one under consideration, discloses that all save the section relating to “fireresisting construction” apply in terms to buildings already in existence. The section relating to fire-resisting construction specifically *56 refers to “every building hereafter erected or altered.” It thus appears that the provisions relating to exits, fire escapes, heating apparatus, width of aisles, stairways, partition walls inclosing lobbies and corridors, or separating them from the auditorium, lighting, fire protection, stage paraphernalia, ventilators, etc., were to be immediately complied with. Theater buildings thereafter erected were to be governed not only by the provisions relating to old buildings, but also by the additional provision to which reference has been made.
■ Having in mind, as we must, the scope and general purpose of these regulations, the mischiefs aimed at, what is the reasonable, and therefore the proper, construction of the regulation in question ? Appellee contends that the word “changes,” as there used, relates to future alterations in the levels of the floors of theater buildings, and has no application to existing conditions. This view was adopted by the court. Appellant, on the other hand, contends that “changes” is used in the sense of variations, and that the section was intended to require all variations in floor levels to be by inclines of a prescribed gradient, and in no other way. It is a matter of common knowledge that a step in an aisle over which a dense mass of people must pass is liable, even under normal conditions, to cause stumbling and confusion. It is apparent that in cases of sudden alarm or panic the presence of such a step would be almost certain greatly to impede progress and result in serious injury to many persons. The impulse of an audience to leave the building in the event of a sudden alarm is general, and upon such an occasion it is impossible for anyone to look at the floor, owing to the congestion. The commissioners knew this, hence the regulation. Surely it was not a requirement very difficult of accomplishment; but whether it was or not is beside the question. If conditions existed in any building used as a place of public assembly calculated to put human life in jeopardy, either those conditions should have been eliminated, or the use of the building for such a purpose should have been discontinued. •
Having in mind that this regulation was “for the public *57 safety in theaters and other public places of amusement in the District of Columbia;” that it was a reasonable regulation;, that the necessity for immediate compliance therewith was apparent; that it was placed with a score of similar provisions, all of confessedly present application; that the only provision in the regulations of future application was specifically so made; that a reasonable reading of the regulation is in harmony with the view that it is immediate in its application, we conclude that the court erred in not so ruling. To be more specific, we rule that wherever changes or variations in the levels of the floors of theaters and public places of amusement in the District occur, with the exceptions noted in the regulation, such variations in levels “shall be made by inclines of no steeper gradient than two in ten within the auditorium, and rising toward the exits, and one in ten for. all others.” “Changes” and “variations” are synoymous; and it is, we think, an unreasonable construction to place upon the regulation to hold that the commissioners thereby intended to permit the continuance of conditions which they knew to be pregnant with peril.
“It is the settled doctrine of this court that if the jury can fairly find from the evidence that, without contributory negligence on the part of the injured person, the neglect of a statutory duty was the proximate cause of the injury, negligence exists as a matter of law,” citing cases. Mr. Chief Justice Shepard, in Capital.Traction Co. v. Apple, 34 App. D. C. 567. Deserant v. Cerillos Coal R. Co. 178 D. S. 409, 44 L. ed. 1127, 20 Sup. Ct. Rep. 967, 20 Mor. Min. Rep. 573, incidentally involved an act relating to ventilation of coal mines. The-court said: “We think the instructions numbered 1, 6, and 11,. given at the request of the defendant, ignored the obligations-of the act of Congress, and are so far inconsistent with the other instructions that they tended to confusion and misapprehension, making the duty of the mine owner relative, not absolute, and its test what a reasonable person would do, instead of making the test and measure of duty the command of the statute.”
*58 It is apparent that appellant was injured by the interpretation placed upon said regulation by the court.
We do not deem it necessary to enter upon a discussion of the constitutional question suggested but not considered in appellee’s brief. We are here dealing with an exercise of the police power,—“one of the most essential powers, at times the most insistent, and always one of the least limitable of the powers of government.” District of Columbia v. Brooke, 214 U. S. 138, 53 L. ed. 941, 29 Sup. Ct. Rep. 560. Every citizen, in the use and enjoyment of his property, is subject to the -exercise of this power whenever such exercise is necessary for the public safety. Barbier v. Connolly, 113 U. S. 31, 28 L. ed. 924, 5 Sup. Ct. Rep. 357. Health Dept. v. Trinity Church, 145 N. Y. 32, 27 L.R.A. 710, 45 Am. St. Rep. 579, 39 N. E. 833, is directly in point. In that case it was contended that a ■statute requiring water to be furnished on each floor of tenements was unconstitutional as applied to existing buildings. In the opinion written by Judge Peckham,—afterwards Mr. Justice Peckham of the Supreme Court of the United States,—the court said: “To so hold would run counter to the general course ■of decisions regarding the validity of laws of this character, and •to mistake the foundation upon which they are placed.”
In Harrington v. Providence, 20 R. I. 233, 38 L.R.A. 305, 38 Atl. 1, the court said: “Legitimate police regulations may involve the improvement and alteration of property, and this may result in rendering parts of the property to be improved or altered useless, and perhaps in destroying their value as property. This should not be regarded as the taking of property, but as a necessary incident to regulation; for as the minor part has value only as serving the purpose of the principal property, it must necessarily yield to the requirements of the latter.” See, also, Tenement House Dept. v. Moeschen, 179 N. Y. 325, 70 L.R.A. 704, 103 Am. St. Rep. 910, 72 N. E. 231, 1 A. & E. Ann. Cas. 439; Com. v. Roberts, 155 Mass. 281, 16 L.R.A. 400, 29 N. E. 522; Cincinnati v. Steinkamp, 54 Ohio St. 284, 43 N. E. 490.
*59 For the foregoing reasons the judgment must be reversed, •with costs, and the cause remanded, witb directions to grant .a new trial. Reversed and remanded.