EL MUNICIPIO DE SAN LORENZO, REPRESENTADO POR SU ALCALDE PEDRO BORGES, ET AL., apelantes. *v.* LA JUNTA DE PLANIFICACIÓN, URBANIZACIÓN Y ZONIFICACIÓN DE PUERTO RICO, ETC., apelados.

Núm. 1.—*Sometido:* Febrero 3, 1948. *Resuelto:* Abril 22, 1948.

*David Curet Cuevas,* abogado de los apelantes; *Rafael R. Fuertes, Félix Bello* y *A. Sandín del Manzano,* abogados de la apelada; *Félix Sojo Granado,* por la Autoridad sobre Hogares de Puerto Rico, como *amicus curiae* ésta.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

En abril 9 de 1947, la Junta de Planificación, Urbanización y Zonificación de Puerto Rico dictó una Resolución declarando "Zona de Arrabal" una parcela de terreno radicada en la zona urbana del término municipal de San Lorenzo, con un área de 41,700 pies cuadrados y en la cual radican treinta y tres construcciones. Con anterioridad a la fecha de dicha resolución la Junta notificó a todos los dueños de terrenos, casas y edificaciones dentro de la zona y también al Alcalde de San Lorenzo, informándoles de su intención de declarar esa zona del municipio como arrabal y convocándoles para una audiencia pública, la cual fué celebrada el 14 de marzo de 1947.

No estando conformes con lo resuelto por la Junta, el Alcalde y tres personas más instaron el presente recurso de acuerdo con las disposiciones del artículo 6 de la Ley núm. 264 de 14 de mayo de 1945.

Alegan los apelantes (1) que la citada Ley núm. 264 es inconstitucional por haber sido aprobada por la Asamblea Legislativa en exceso de los poderes que le confiere la Carta Orgánica; (2) que las actuaciones de la Junta no se ajustaron a la garantía constitucional de un debido procedimiento de ley, ni tampoco a las normas que le traza la misma Ley núm. 264; y (3) que la evidencia recibida por la Junta no es suficiente para sostener la resolución recurrida.

La alegada inconstitucionalidad de la Ley núm. 264 de 14. de mayo de 1945, página 911, se funda en que, a juicio de los apelantes, les priva de su propiedad sin el debido proceso de ley y sin compensación adecuada, en contravención de las disposiciones expresas del artículo 2, párrafos 1 y 9 de la Ley Orgánica.

El ataque de los apelantes va dirigido especialmente contra el artículo 9 de la referida Ley, en el que se dispone:

"En lo sucesivo será ilegal construir edificación o estructura alguna en una zona declarada "Zona de Arrabal" de acuerdo con la presente ley, e igualmente será ilegal vender, arrendar o en cualquier otra forma ceder terrenos en dicha zona para fines de edificación en los mismos y será igualmente ilegal llevar a cabo reparaciones o mejoras en casas situadas en una zona de arrabal, sin un previo permiso o autorización escrita de la Autoridad sobre Hogares de Puerto Rico; *Disponiéndose, sin embargo,* que en ningún caso podrán permitirse mejoras que consistan en ampliaciones de ninguna casa, edificación o estructura situada en una zona de arrabal y que ningún Registrador de la Propiedad podrá investigar o inscribir ninguna venta o traspaso alguno de terreno o vivienda en una zona de arrabal sin el consentimiento de la Autoridad sobre Hogares de Puerto Rico."

La contención de los apelantes es que el procedimiento provisto por el artículo transcrito es uno de expropiación,

ya que se priva al ciudadano del derecho a disfrutar y a disponer de su propiedad; que ese procedimiento es anticonstitucional porque suprime la intervención de los organismos judiciales y no garantiza una compensación justa al expropiado; y, por último, que la Ley es nula por el motivo adicional de que confiere a la Autoridad sobre Hogares poderes absolutos "para determinar la forma a la cual deberá ajustarse el propietario en el disfrute de la propiedad."

La eliminación de arrabales perjudiciales a la seguridad, a la salud, bienestar o moralidad de sus habitantes es un fin público para la realización del cual el Estado se ve obligado a ejercitar dos de sus más extraordinarios poderes— el poder de policía (*police power*), y el de expropiación (*eminent domain*). En el ejercicio del poder de policía y con el propósito de proteger la salud y el bienestar de la comunidad, el Estado está facultado para reglamentar y restringir todo aquello que constituya o que de no ser restringido pueda convertirse en un peligro para la salud y seguridad de los ciudadanos.

Son numerosas las autoridades que sostienen que cuando en una sección determinada de una ciudad las condiciones sanitarias y las viviendas son tan deficientes que ponen en peligro la salud, la seguridad y la moralidad de sus habitantes, el Estado puede expropiar la zona donde existen tales condiciones, pagando la debida compensación; o puede, en el ejercicio del poder de policía, ordenar que se hagan cambios razonables en las edificaciones allí existentes, para la protección de la comunidad. En este último caso, los gastos en que incurra el dueño de la propiedad se considera como *damnum absque injuria*.(1)

---

(1)*Ryan* v. *Housing Authority,* 15 A.2d 647; *Lott* v. *City of Orlando,* 196 So. 313; *N. Y. C. Housing Authority* v. *Muller,* 270 N.Y. 333, 105 A.LR. 905; *Romano* v. *Housing Authority of Newark,* 10 A.2d. 181, confirmado en 12 A.2d 384. *Tenement House Dept. City of N. Y.* v. *Moeschen,* 179 N. Y. 325, 72 N.E. 231.

En varias decisiones (²) se ha sostenido que el hecho de que una ley o reglamentación promulgada en el ejercicio del poder de policía, impida o restrinja el goce de ciertos derechos individuales sobre una propiedad, sin disponer el pago de compensación, no hace que la ley o reglamentación sea necesariamente inconstitucional por violar la cláusula del debido proceso o por expropiar propiedad privada para uso público sin compensación. Esas leyes, cuando son razonables y no trascienden los límites y propósitos del poder de policía del estado, no son consideradas como expropiadoras de propiedad privada para uso público y sí como reguladoras del uso y disfrute de la propiedad por su dueño. Si éste sufre algún perjuicio, el mismo es o *damnum absque injuria* o se considera compensado por la participación que el dueño de la propiedad habrá de tener en los beneficios que la ley trata de conseguir para toda la comunidad.

En el caso de autos la Junta de Planificación, actuando dentro de las facultades que le confiere la mencionada Ley núm. 264, se limitó a hacer una declaración de zona de arrabal, siguiendo para ello el procedimiento autorizado por los artículos 3, 4 y 5 de dicha Ley y procedió a colocar la zona bajo la supervisión e inspección de la Autoridad sobre Hogares, según lo dispuesto en el artículo 7. No se trata, pues, de la eliminación de un arrabal, para la cual la Autoridad tendría que ajustarse a lo dispuesto en el artículo 8 de la Ley, adquiriendo por compra voluntaria o por expropiación forzosa el terreno y las propiedades comprendidas dentro de la zona.

La defensa de inconstitucionalidad de la ley debe ser desestimada.

■■ En estos dos señalamientos * alegan los apelantes que la Junta de Planificación "como una cuestión de hecho,

---

(2)*New Orleans Public Service* v. *New Orleans,* 281 U.S. 682, 74 L. ed. 1115; *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U.S. 548, 58 L. ed. 721; *Hardin-Wyandot Lighting Co.* v. *Upper Sandusky,* 251 U.S. 173, 64 L. ed. 210.

* Señalamientos 2 y 3.

en la tramitación de todo este procedimiento, no garantizó a los apelantes un debido procedimiento de ley''; y que la Junta erró al desviarse del procedimiento que fija la ley, al cual debió ajustarse para que su declaración fuera válida.

Se quejan los apelantes de que la notificación hecha al Alcalde y a los propietarios no se ajustó a las disposiciones de la Ley núm. 264 de 1945 y sostienen que la misma es fatalmente defectuosa. Sostiene, en contrario, la Junta recurrida que la notificación se ajustó en su forma y contenido a lo dispuesto por el artículo 4 de la citada ley.

El artículo 4 de la Ley núm. 264 de 1945 dispone que antes de hacerse la declaración de ''zona de arrabal'', la Junta notificará al Alcalde del municipio y a todos los dueños de terrenos o de edificaciones su intención de hacer tal declaración; que la notificación deberá contener una descripción detallada de la zona afectada, indicando claramente sus límites, así como las calles y callejones comprendidos dentro de la zona; que por la misma notificación se convocará a las personas notificadas a una audiencia pública en la alcaldía, expresando hora y fecha de la misma, para que puedan exponer las razones que estimaren pertinentes en oposición a la declaración de ''zona de arrabal'' proyectada. Hemos examinado la copia de la notificación hecha a los aquí apelantes y encontramos que la misma se ajusta a los requisitos del citado artículo 4.

Del récord taquigráfico de la audiencia pública celebrada el día 14 de marzo de 1947, el cual tenemos a la vista, aparece que el Alcalde de San Lorenzo y los otros tres apelantes estuvieron presentes en dicho acto y tuvieron amplia oportunidad para repreguntar los testigos presentados por la Autoridad sobre Hogares de Puerto Rico en apoyo de su solicitud de declaración de ''zona de arrabal''. El primer testigo ofrecido por la Autoridad fué el Sr. José A. Seraballs, ingeniero civil y sanitario, empleado en el Negociado de Saneamiento del Departamento de Salud, quien de-

claró que en su carácter oficial y a base de un plano preparado por la Autoridad practicó una inspección de las condiciones sanitarias de la zona en cuestión y preparó un informe con fecha 26 de febrero de 1947. El testigo dió lectura al informe, el cual fué presentado en evidencia y hecho parte del récord de la audiencia. Del informe y de la declaración del Sr. Seraballs aparece que en la parcela en cuestión existen 43 casas, en su mayoría en malas condiciones sanitarias, aglomeradas y con muy pocas facilidades; que solamente cuatro de esas casas tienen instalación sanitaria conectada con el alcantarillado del pueblo y descargan las aguas del lavado de ropas y del fregado en la calle, siendo los terrenos más elevados que el nivel de la calle Valeriano. Muñoz; en la calle Maracas, que es más baja, las casas descargan hacia atrás, sobre terrenos de la Autoridad sobre Hogares; que allí se forma un área pantanosa que constituye un foco de infección y de enfermedades contagiosas; que las letrinas están en muy mal estado sanitario porque el terreno, que es de tosca sólida, no filtra; que la mayoría de las viviendas no tienen los dos metros de callejones laterales que exige el Reglamento de Sanidad, para que haya suficiente ventilación sanitaria; y, por último, que la zona está en condiciones completamente insalubres. Al terminar la declaración del Sr. Seraballs, el Presidente puso el informe escrito a disposición de los apelantes allí presentes.

La Autoridad sobre Hogares presentó el testimonio de la Srta. Luz María Sitiriche, trabajadora social y supervisora de distrito del Negociado de Asistencia Pública del Departamento de Salud. Declaró en cuanto a las condiciones económicas y sociales de la barriada, incluyendo problemas de salud, facilidades sanitarias, número de casas y de familias. La testigo dió lectura al informe oficial preparado por ella, el cual fué presentado en evidencia y hecho parte del récord. Del mismo aparece que las 43 casas

están habitadas por 57 familias, con un total de 261 personas. El informe fué puesto a disposición de los apelantes allí presentes.

El próximo testigo, Sr. Perfecto Montalvo, ingeniero de la Autoridad sobre Hogares, presentó el plano preparado por él, el cual representa la zona en controversia, apareciendo en el mismo las 43 casas, las distancias entre unas casas y otras y demás detalles. El plano fué admitido en evidencia y puesto a disposición de las partes interesadas. También fué admitido y leído a los allí presentes el informe oficial preparado por el mismo Sr. Montalvo.

El testigo Esteban Fuertes, Supervisor General de la División de Inquilinos de la Autoridad sobre Hogares, identificó como tomadas bajo su dirección un grupo de fotografías de la zona en discusión, las cuales fueron admitidas como evidencia.

Terminada la presentación de la prueba de la Autoridad sobre Hogares, el funcionario que presidía la audiencia invitó a todos los interesados allí presentes a que expresaran su opinión y a hacer las preguntas que creyesen convenientes. Del récord aparece un extenso interrogatorio y una amplia discusión en la que tomaron parte el Alcalde y los demás apelantes. Hicieron constar los representantes de la Autoridad sobre Hogares que ésta tenía el propósito, tan pronto hubiese fondos disponibles, de eliminar la zona en cuestión, mediante la compra voluntaria o expropiación de los terrenos y las edificaciones; y que, entretanto, la zona continuaría en las mismas condiciones en que se encontraba, aun cuando podrían hacerse reparaciones, mejoras y ampliaciones con permiso de la Autoridad.

La cláusula constitucional sobre el debido procedimiento de ley no requiere que se siga un procedimiento especial, ni tampoco que la persona interesada sea oída públicamente ante una junta o tribunal determinado. El requisito constitucional queda cumplido cuando a la persona se le con-

cede una audiencia imparcial, después de una notificación razonable, ante una junta, tribunal o corte que tenga jurisdicción sobre los procedimientos y sobre las partes. *City of Chicago* v. *Samuel J. Cohn et al.*, 55 A.L.R. 196; 42 Am. Jur. sec. 119, pág. 455; *Heinlen* v. *Heilbron,* 94 Cal. 636, 30 P. 8; *Shearman* v. *Jorgensen,* 106 Cal. 483.

Las juntas y tribunales administrativos no están obligados a seguir las mismas reglas técnicas de procedimiento aplicables a las cortes de justicia. Es suficiente si se sigue un procedimiento mediante el cual se dé a la persona interesada una oportunidad razonable para enterarse de la cuestión envuelta en el procedimiento y para defender sus derechos. *Sherer* v. *City of Laguna Beach,* 57 P.2d. 157, 13 Cal. App. 2d. 396 y casos allí citados.

El récord en el presente caso demuestra que los apelantes fueron oportuna y razonablemente notificados para que comparecieran, como lo hicieron, a la vista pública celebrada el 14 de marzo de 1947; que estuvieron presentes durante dicha vista, oyeron declarar a todos los testigos y leer todos los informes escritos ofrecidos en evidencia; y, por último, que repreguntaron a los testigos y alegaron lo que creyeron conveniente en oposición a que la zona en cuestión fuese declarada "zona de arrabal".

El procedimiento seguido por la Junta recurrida se ajustó a la ley y al precepto constitucional.

En el cuarto señalamiento se alega que la junta recurrida erró "al hacer una declaración de zona de arrabal que no está sostenida por la prueba ofrecida a la propia Junta."

La prueba ofrecida por la Autoridad sobre Hogares y aceptada y creída por la Junta de Planificación es, a nuestro juicio, suficiente para justificar la declaración de zona de arrabal. Es cierto que algunos de los dueños de casas ubicadas en la zona se opusieron a la declaración y alegaron que sus casas tienen servicio sanitario, ventilación y es-

tán conectadas con el alcantarillado. Empero, esas pocas declaraciones individuales no son por sí solas suficientes para borrar la impresión que produce la lectura del récord taquigráfico y de los informes de los inspectores sanitarios y de las trabajadoras sociales, al efecto de que las condiciones prevalecientes en la zona en cuestión son indeseables y deben ser corregidas de acuerdo con lo dispuesto en las leyes vigentes. Debemos presumir que tanto la junta recurrida como la Autoridad sobre Hogares no tienen otro interés que no sea el de mejorar las condiciones de vida de los habitantes de la zona que ha sido declarada "zona de arrabal"; y, siendo la prueba suficiente para sostener sus conclusiones, éstas deben ser respetadas por esta Corte.

*La resolución recurrida será confirmada.*