## LEWKOWICZ v. QUEEN AEROPLANE CO.

(Supreme Court, Appellate Division, First Department. December 20, 1912.)

1. CONSTITUTIONAL LAW (§ 16*)—CONSTRUCTION OF CONSTITUTIONAL PROVISIONS—POWER OF COURT.

The court, in construing doubtful constitutional provisions, may ascertain the mischief designed to be remedied or the purpose to be accomplished, and it may examine the proceedings of the constitutional convention.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 12, 16; Dec. Dig. § 16.*]

2. COURTS (§ 160*)—INFERIOR COURTS—JURISDICTION—CONSTITUTIONAL PROVISIONS.

The City Court of the City of New York is an inferior local court, within Const. art. 6, §§ 14, 18, giving the County Court jurisdiction in an action for the recovery of money only where the complaint demands judgment not exceeding $2,000, and prohibiting the conferring on inferior local courts of any greater jurisdiction than is conferred on County Courts, so that Laws 1911, c. 569, amending Code Civ. Proc. § 316, by increasing from $2,000 to $5,000 the sum for which judgment may be rendered in the City Court, is unconstitutional.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 405; Dec. Dig. § 160.*]

3. COURTS (§ 188*)—INFERIOR COURTS—JURISDICTION—STATUTORY PROVISIONS.

Code Civ. Proc. § 316, providing that judgment entered in an action in the City Court of the City of New York for money only shall not exceed $2,000 does not affect the jurisdiction of the court in an action to recover a greater sum, and it has jurisdiction of such action, but its judgment cannot exceed the specified amount.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 437–468; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term, First Department.

Action by Ladis Lewkowicz against the Queen Aëroplane Company. From a determination of the Appellate Term (77 Misc. Rep. 151, 136 N. Y. Supp. 894), modifying a judgment of the City Court for $4,316.32, by reducing it by $650, and, as modified, affirming it and the order denying a new trial, and from an order affirming an order of the City Court denying a motion to reduce the judgment to $2,078.82, defendant appeals. Reversed and entered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert Leslie Moffett, of New York City, for appellant.
Eugene I. Gottlief, of New York City, for respondent.

CLARKE, J. The action, brought in the City Court of New York, was for damages for breach of a written contract of employment, and the complaint demanded judgment for a sum of money only, namely, $5,000. The judgment was for $4,316. Thereafter defendant made a motion to reduce the judgment to $2,078.82, which motion was denied. The Appellate Term having modified the judgment slightly, and, as modified, affirmed the same, as well as the order denying the reduction prayed, this appeal is taken.

These appeals bring up for determination the constitutionality of chapter 569 of the Laws of 1911, which amends sections 315 and 316 of the Code of Civil Procedure, affecting the jurisdiction of the City Court of the City of New York. The particular clause under consideration is as follows:

"Sec. 316. The Last Section Limited.—The jurisdiction conferred by the last section is subject to the following limitations and regulations: 1. In an action wherein the complaint demands judgment for a sum of money only, the sum for which judgment is rendered in favor of the plaintiff cannot exceed $5,000, exclusive of interest and costs as taxed. * * * "

The effect of the amendment was to raise the limitation of jurisdiction of said court in said actions from $2,000 to $5,000. The constitutional provisions claimed to be contravened are sections 14 and 18 of article 6.

By the Constitution of 1777 but one court was *created,* viz., the Court for the Trial of Impeachments and the Correction of Errors. Article 32. In various provisions the existence of the Court of Chancery, the Supreme Court, the County Court, the Court of Probate, the Court of Admiralty, and justices of the peace were recognized. Articles 24, 25, 27, 28. The only limitations upon the power of the Legislature in respect to the courts were that:

"Trial by jury, in all cases, in which it hath heretofore been used in the colony of New York, shall be established, and remain inviolate forever," and "that the Legislature of this state shall, at no time hereafter, institute any new court or courts, but such as shall proceed according to the course of the common law." Article 41.

The Constitution of 1821 contained provisions for the Court for the Trial of Impeachments and the Correction of Errors (article 5, § 1), the Supreme Court (section 4), circuit judges (section 5), judges

of the County Courts and recorders of cities (section 6). The Court of Chancery (article 5, § 3), the Court of Oyer and Terminer, the General Sessions of the Peace of the City of New York (article 4, § 13), the special justices and assistant justices in the city of New York, and justices of the peace in the other counties of the state, were recognized (section 14). Article 7, § 2, provided:

"The trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever; and no new court shall be instituted, but such as shall proceed according to the course of the common law, except such courts of equity, as the Legislature is herein authorized to establish."

With no constitutional limitation upon its power, the Legislature from time to time created, continued, and enlarged the jurisdiction of certain local courts. In the city of New York, the ancient Mayor's Court had its title changed in 1821 to the Court of Common Pleas in and for the City and County of New York. The Superior Court of the City of New York was created by the act of March 31, 1828 (Laws 1828, c. 137), and given the same jurisdiction as the Supreme Court in all civil cases if either the plaintiff or the defendant was a resident of the city or the property involved was situated within the city limits. In Buffalo the Recorder's Court of Buffalo was established by chapter 210 of the Laws of 1839.

The judiciary article of the Constitution of 1846 (article 6, § 1) provided for the Court for the Trial of Impeachments, the Court of Appeals, a Supreme Court having general jurisdiction in law and equity, a County Court in each of the counties, except the city and county of New York, abolished the Court of Chancery, and provided generally for the election of judges. Section 14 provides that:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature in cities; and such courts, except for the cities of New York and Buffalo, shall have an uniform organization and jurisdiction in such cities."

Section 12 of article 14 provided that:

"All local courts established in any city or village, including the Superior Court, Common Pleas, Sessions and Surrogates' Courts of the City and County of New York shall remain until otherwise directed by the Legislature with their present powers and jurisdictions."

By chapter 96 of the Laws of 1854, the act establishing the Recorder's Court of Buffalo was amended. It provided that:

"The court known as the Recorder's Court of the City of Buffalo is hereby continued, with the additional jurisdiction conferred by this act."

Its name was changed to the Superior Court of Buffalo and additional jurisdiction was conferred upon it.

In International Bank v. Bradley, 19 N. Y. 245, the Court of Appeals said:

"By the Constitution of 1846 (article 6, § 14, subd. 5) it was provided that 'inferior local courts of civil and criminal jurisdiction may be established by the Legislature in cities; and such courts (except for the cities of New York and Buffalo) shall have a uniform organization and jurisdiction in such cities.' Here the subject of organization and jurisdiction, so far as New York and Buffalo are concerned, was left open to further legislative amendment

and re-enactment. \* \* \* Section 12, art. 14 was intended, undoubtedly, to give the Legislature the power to alter or enlarge, as well as to abolish, these local courts. Their existence, power, and jurisdiction were all committed to the care of that body, especially those created in the cities of New York and Buffalo"

—and held the act constitutional, although it conferred practically equal jurisdiction with the Supreme Court, except in so far as it was a local court.

The City Court of Brooklyn was established by chapter 125 of the Laws of 1849, with limited jurisdiction as to subjects and restricted as to territory and the limits within which it was exercised and over persons. Landers v. Staten Island R. R. Co., 53 N. Y. 450.

A new judiciary article was adopted by the people in 1869. By section 12 thereof it was provided:

"The Superior Court in the City of New York, the Court of Common Pleas for the City and County of New York, the Superior Court of Buffalo, and the City Court of Brooklyn, are continued with the powers and jurisdiction they now severally have, and such further civil and criminal jurisdiction as may be conferred by law. \* \* \* The Legislature may provide for detailing judges of the Superior Court and of the Court of Common Pleas of New York to hold Circuit and Special Terms of the Supreme Court in that city, and for detailing judges of the City Court of Brooklyn, to hold Circuit and Special Terms of the Supreme Court in Kings County as the public interest may require."

Section 15 provided:

"The existing County Courts are continued. \* \* \* The County Courts shall have the powers and jurisdiction they now possess, until altered by the Legislature. They shall also have original jurisdiction in all cases where the defendants reside in the county and in which the damages claimed shall not exceed one thousand dollars, and also such appellate jurisdiction as shall be provided by law, subject, however, to such provision as shall be made by law for the removal of causes into the Supreme Court. They shall also have such other original jurisdiction as shall, from time to time, be conferred upon them by the Legislature."

And section 19 provided:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature."

Of this definite recognition in the Constitution Judge Allen said, in the Landers Case, supra:

"The City Court of Brooklyn was established, as were some of the other courts referred to, as 'an inferior local court of civil and criminal jurisdiction' under the authority of the Constitution of 1846. Const. art. 6, § 14. The struggle in the convention which framed the present substitute for article 6 of the Constitution of 1846 was to constitutionalize—that is, to make permanent and take from the Legislature—the power to abolish the four courts named in the amended article. \* \* \* Whatever jurisdiction those courts possessed, whether territorially or otherwise, is by the Constitution put beyond legislative discretion; that is, the jurisdiction before statutory is now exercised under the Constitution."

In Alexander v. Bennett, 60 N. Y. 204, Rapallo, J., said:

"The Constitution of this state (article 6, § 12) continues in the Superior Court of the City of New York, and certain other courts, the powers and jurisdiction which they had at the time of the adoption of that article. This

provision, unquestionably, deprived the Legislature of all power to take from those courts any of their then existing jurisdiction."

By chapter 418 of the Laws of 1886 it was sought to take from the Court of Common Pleas the power of reviewing the judgments of the Marine (then the City) Court, and to authorize an appeal direct to the Court of Appeals. Judge Rapallo said, in Hutkoff v. Demorest, 103 N. Y. 377, 8 N. E. 899, 10 N. E. 535, that the act was—

"subject to the fundamental objection that it contravenes section 12 of article 6 of the Constitution by depriving the Court of Common Pleas of its jurisdiction and power to review the judgments of the Marine (City) Court which it possessed at the time of the adoption of this article, and which were thereby rendered permanent and placed beyond the power of the Legislature to take from that court."

In Popfinger v. Yutte, 102 N. Y. 38, 6 N. E. 259, the court held that subdivision 5 of section 263 of the Code of Civil Procedure, which purported to confine the jurisdiction of the Superior Court of the City of New York in judgment creditors' actions to actions on its own judgments was inoperative and void; Judge Rapallo saying:

"By the Constitution of 1846 (article 14, § 12) the Superior Court was continued, *until otherwise directed by the Legislature*, with its then present powers and jurisdiction. Under the Code of Procedure the Superior Court of the City of New York, had, within its territorial limits, general jurisdiction in equity coequal with that of the Supreme Court. Bowen v. Trustees, etc., Irish Presb. Congregation, 6 Bosw. 245; Porter v. Lord, 4 Duer, 682. This jurisdiction existed at the time of the adoption of article 6, which was on the 6th day of December, 1869. By that article (article 6, § 12) it was declared that the Superior Court of the City of New York, with other local courts, was continued with the powers and jurisdiction it then possessed and such *further* civil and criminal jurisdiction as might be conferred by law. The words 'until otherwise directed by the Legislature,' which were contained in section 12 of article 14 of the Constitution of 1846, were omitted in the amendment of 1869. Although there was no express repeal or amendment of article 14, § 12, of the Constitution of 1846, yet we are of opinion that, as the amended article 6, § 12, covers the same subject as section 12 of article 14 it must be regarded as a substitute therefor, and as superseding it and permanently continuing the then existing jurisdiction of the Superior Court, with such further jurisdiction as might be conferred, and depriving the Legislature of the power of taking away from that court any of the jurisdiction or powers which it possessed at the time of the adoption of article 6. Ross v. City of Brooklyn, 69 N. Y. 605."

As said by Judge Rapallo in the Hutkoff Case, supra:

"The Marine Court of the City of New York was a court of great importance, of ancient origin, and transacting a very large amount of business."

He traced its history. It is the successor of the Justice's Court in and for the city and county of New York. It was established in 1807, with jurisdiction involving amounts from $25 to $50, and in marine cases between master and mariner. Chapter 139, Laws of 1807. By chapter 71 of the Laws of 1819, the court was reorganized, and its name changed to the Marine Court of the City of New York. Its jurisdiction in amount was gradually increased, by chapter 389 of the Laws of 1852 to $250, by chapter 617 of the Laws of 1853 to $500, and further enlargements of its jurisdiction were afterwards made. By chapter 26 of the Laws of 1883 its name was changed to the City

Court. At the time the last constitutional convention met, in 1894, its jurisdiction was defined in section 315 of the Code of Civil Procedure as limited by section 316 thereof.

"The jurisdiction conferred by the last section is subject to the following limitations and regulations: 1. In an action wherein the complaint demands judgment for a sum of money only, the sum, for which judgment is rendered in favor of the plaintiff, cannot exceed two thousand dollars, exclusive of interest, and costs as taxed. * * * "

Throughout its entire history it has always been a local and inferior court, and it has never been recognized by the Constitution.

This hasty review of the constitutional and statutory history of the courts of the state, illustrated by the cases cited, presents the situation as it existed when the constitutional convention met. That convention created an entirely new judicial system. It preserved the Court of Appeals with a limited jurisdiction, continued the Supreme Court as the only court of original jurisdiction throughout the state, both in law and equity, abolished the local courts which had acquired, within their territorial limitations, equal power and jurisdiction with the Supreme Court, increased the powers of the County Courts, and limited the power of the Legislature in important particulars. The precise constitutional provisions in point, in the case at bar, are the following:

Section 14 of article 6:

"County Courts shall have the powers and jurisdiction they now possess, and also original jurisdiction in actions for the recovery of money only, where the defendants reside in the county, and in which the complaint demands judgment for a sum not exceeding two thousand dollars. The Legislature may hereafter enlarge or restrict the jurisdiction of the County Courts: Provided, however, that their jurisdiction shall not be so extended as to authorize an action therein for the recovery of money only, in which the sum demanded exceeds two thousand dollars, or in which any person not a resident of the county is a defendant."

Section 18 provides:

"Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, but no inferior local court hereafter created shall be a court of record. The Legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article."

[1] It would seem to be so clear that the Legislature was prohibited, after the adoption of the Constitution, from conferring thereafter upon any inferior or local court jurisdiction in actions for the recovery of money only in which the complaint demands judgment for a sum not exceeding $2,000 as not to require aids in the interpretation of the provision. If there be doubt, however, we are entitled to look into the proceedings of the convention.

"When the inquiry is directed to ascertaining the mischief designed to be remedied or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly pointed out the purpose of the provision, the aid will be valuable and satisfactory." Cooley's Constitutional Limitations (7th Ed.) page 111.

Such method has been adopted in this state (Coutant v. People, 11 Wend. 511; People v. Purdy, 2 Hill, 31; Landers v. Staten Island R. R. Co., 53 N. Y. 450), and in other states (Wisconsin Central R. R. Co. v. Taylor, 52 Wis. 37, 63, 8 N. W. 833; State ex rel. Attorney General v. Kennon, 7 Ohio St. 546). This method has also received the approval of the Court of Appeals in interpreting statutes (People ex rel. Barone v. Fox, 144 App. Div. 611, 129 N. Y. Supp. 646, reversed on the dissenting opinion below 202 N. Y. 616, 96 N. E. 1126), where the report of a commission appointed by the Governor under a statute was given great weight in the interpretation of the act, which had been prepared by it and reported to the Legislature for passage. The report of the tenement house commission appointed by the Governor pursuant to an act of the Legislature was taken judicial notice of in seeking to ascertain the intention of the Legislature in People ex rel. Cohen v. Butler, 125 App. Div. 384, 109 N. Y. Supp. 900, and was quoted from in Tenement House Dept. v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910, 1 Ann. Cas. 439.

[2] The judiciary article was presented by the judiciary committee of the convention, of which Elihu Root was chairman, with an explanatory report, 5,000 copies of which were printed and ordered distributed prior to the discussion, and which was known as Document No. 53 in the proceedings of that convention, and may be found at page 461 of volume 2 of the revised record of the convention. Paragraph X and XI thereof are as follows:

"X. The jurisdiction of County Courts is enlarged to include actions against residents of the county for the recovery of money only to the amount of $2,000, and the Legislature is prohibited from enlarging it further in such cases. * * *

"XI. Provision has been made for preventing a repetition of the process by which, through constantly enlarging the jurisdiction of local and inferior courts, local rivals of the Supreme Court are built up. The trial of small causes is just as important to the people who have them as the trial of large causes is to others. When a court is organized for the purpose of trying small causes, enlargement of its jurisdiction necessarily withdraws its attention, interest, and efforts from its original field of work. Therefore, while we leave power in the Legislature to establish inferior local courts, we provide that they shall not be courts of record, and that the Legislature shall not confer upon them any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts."

In opening the debate, Mr. Root said, as reported at page 901, volume 2:

"We have done one other thing, to which I beg to call your attention. That is this: There has been a constant process in this state of enlargement of the jurisdiction of the local and inferior tribunals. That is the way in which we found ourselves confronting the situation of four Superior Courts which had been gradually built up, one of them during 200 years, the others during much shorter periods, by the constant addition of jurisdiction, until each one had equal jurisdiction with the Supreme Court within the locality in which it was situated. * * * So, while we destroy by consolidating all these tribunals which have grown to be equal in jurisdiction to the Supreme Court, and leave only one Supreme Court, we prohibit the Legislature from ever enlarging the jurisdiction of local and inferior courts, so that they shall exceed, as to the courts now existing, the jurisdiction they now have,

and, as to any court they may hereafter create, the jurisdiction of the County Courts. We thus keep down to the level of the County Courts local and useful tribunals, adapted to the performance of specific functions, all courts except the one Supreme Court; and we do that, not only for symmetry, not only to avoid the inconvenience to which I have referred of the building up of these rivals to the Supreme Court, but we do it because it gives effect to a principle, and this is the principle. The proper trial of small causes is just as important as the proper trial of large causes. Small causes are just as important to those who have them as large causes are to wealthier men. The great body of the people of the state have only small causes. When a court is organized for the trial of small causes, it ought to attend to its business and try to do it just as well as any other court tries a $1,000,000 cause. But, if you enlarge the jurisdiction, and give it $1,000,000 causes to try it will never attend to the little causes and you spoil your court for the trial of the small causes, and merely add another court to those which try large ones. We propose, by this inhibition upon the Legislature, to keep a system of courts in this state which will attend to the proper function of properly trying the small causes, in which the great body of the people are more interested than they are in the large ones."

During the course of the debate there was an attempt made to enlarge the jurisdiction of the County Courts, to increase the amount to $3,000, to $10,000, and to put no limitation at all thereon. All of these proposed amendments were voted down. There was an attempt also made to put the City Court in the Constitution by a motion to amend in relation to appeals, so as to provide for a direct appeal to the Court of Appeals. In opposing that amendment Mr. Root said:

"Mr. Chairman: There is a widespread opinion that the City Court of New York ought to be abolished. Its jurisdiction is an illustration of the vicious legislation which continually enlarges the jurisdiction of local and inferior courts. I should be very sorry to see the Legislature prevented from dealing with that court in the exercise of its wisdom hereafter, either to abolish it or reduce its jurisdiction, by putting it into the Constitution. I do not think that the court should be treated differently in any particular from any other local and inferior court, and\I think the Appellate Division of the Supreme Court can dispose of the appeals from its judgments to the satisfaction of the people of the city of New York, and I hope this amendment will not prevail."

And thereupon the amendment was voted down. And finally, in the formal address to the people, adopted by the convention and presented as the explanation of its work, appears the following (volume 4, page 1257):

"We have * * * enlarged and defined the jurisdiction of County Courts, * * * forbidding the Legislature to further enlarge the jurisdiction of local and inferior courts of its own creation, and in various other ways simplified and strengthened the judiciary system. The general object of the judiciary article, as proposed, is to secure more speedy, uniform, and effective administration of justice throughout the state."

In Irwin v. Metropolitan Street Ry. Co., 38 App. Div. 253, 57 N. Y. Supp. 21, Mr. Presiding Justice Van Brunt, referring to the constitutional convention of 1894, said:

"It seems to have been their intention to allow the Legislature the same authority which they possessed under the old judiciary article of 1869, as interpreted by the decisions of the Court of Appeals, to establish inferior local courts of civil and criminal jurisdiction, and as the language contained in that judiciary article had been interpreted, and it was well understood what powers would be conferred upon the Legislature by the use of that

language in the new Constitution, it was there inserted without change or amendment. In order, however, that the general scheme of the Constitution, that all unlimited original jurisdiction at law and in equity should be vested only in the Supreme Court, might not be defeated by the establishment of inferior local courts similar to those local courts which were being abolished by the provisions of the instrument they were framing, they added to the words contained in the previous Constitution limitations upon the power of the Legislature to confer jurisdiction within the localities within which the courts were situated. ＊ ＊ ＊ In other words, the framers of the Constitution did not intend to permit local courts to grow up into courts of general jurisdiction, even within the locality wherein they were situated. The Legislature was prohibited from establishing a local court of record, nor could it confer upon any local court of its creation any equity jurisdiction, and then, in order that it might not give such courts general jurisdiction in actions at law, the Constitution restricted the jurisdiction which might be conferred in other respects to that which was conferred upon County Courts by the instrument."

In Worthington v. London Guarantee & Accident Co., 164 N. Y. 81, 58 N. E. 102, the Court of Appeals said:

"It is very clear that the framers of the Constitution intended that not only should the inferior local court be strictly confined to its locality, but that the extent of its jurisdiction should be so limited that there would be no danger of powers being conferred by the Legislature that might interfere with the Supreme Court in the exercise of its general jurisdiction throughout the state. The local court was, therefore, to have no greater jurisdiction than the County Court. ＊ ＊ ＊ The Constitution provides (article 6, § 14), in dealing with County Courts, that they shall be continued and exercise the powers and jurisdiction they then possessed, and the Legislature was empowered to enlarge or restrict the jurisdiction, provided it should not be so extended as to authorize an action therein for the recovery of money only, in which the sum demanded exceeded $2,000 or in which any person not a resident of the county is a defendant. This constitutional limitation as to amount discloses the intention to continue the County Court as an inferior local tribunal, notwithstanding it was a court of record."

We are of the opinion, therefore, that after the adoption of the Constitution of 1894 the Legislature had no power to increase the jurisdiction of the City Court in an action wherein the complaint demands judgment for a sum of money only, above the amount for which it was then limited that judgment might be entered, namely, $2,000. The City Court was an inferior local court created by the Legislature. There was no constitutional inhibition placed upon that court which affected or limited its jurisdiction as it then existed. Such existing jurisdiction was neither preserved nor destroyed, or in any way affected. The court was not mentioned. It was, therefore, left as it had been, within the entire control of the Legislature, except in so far as the Legislature was prohibited from thereafter conferring upon it any equity jurisdiction or any greater jurisdiction *in other respects* than that conferred upon the County Courts by that article.

It follows, therefore, that the amendment to section 316 of the Code of Civil Procedure, attempted to be enacted by chapter 569 of the Laws of 1911, is unconstitutional, inoperative, and void.

[3] The question then arises: What shall be done with the judgment? The defendant made a motion in the City Court to reduce the judgment to the sum of $2,078.82, which motion was denied. The

order entered thereon was affirmed by the Appellate Term, and is before us on appeal. Upon the argument the respondent urged that, if this court should determine that the jurisdiction of the court was limited to $2,000, instead of reversing the judgment or permitting plaintiff to discontinue the action, in order that he might seek his remedy in the Supreme Court, the judgment be reduced to the amount limited.

As pointed out, the City Court was left by the constitutional convention precisely as it found it. The prohibition was placed upon the Legislature which prevented it from thereafter increasing its jurisdiction. At that time it had jurisdiction of the subject-matter of the action, but was limited by statute in respect to the rendition of judgment. It had been held that the limitation was a limitation upon the amount for which judgment could be entered. Re Barbour, 52 How. Prac. 94; Roof v. Meyer, 8 N. Y. Civ. Proc. R. 60. In Ralli v. Pearsall, 69 App. Div. 254, 74 N. Y. Supp. 620, Mr. Justice Ingraham said:

"The jurisdiction of the City Court is fixed by section 315 of the Code. * * * Section 316, providing that the judgment entered in such an action shall not exceed $2,000, does not affect the jurisdiction of the court in an action to recover a greater sum. It has jurisdiction of the action, but the judgment cannot exceed the amount specified. There is a plain distinction between the provision of the Code affecting the City Court of New York and the provisions of the Constitution (article 6, § 14) limiting the jurisdiction of the County Courts to an action in which the complaint demands judgment for a sum not exceeding $2,000. As to such courts the jurisdiction depends upon the amount demanded in the complaint; but, as to the City Court, jurisdiction depends upon the nature of the demand of the complaint, and the limitation is as to the amount of the judgment that the court can award."

As we have declared the amendatory act of 1911 unconstitutional and void, section 316 of the Code of Civil Procedure is as it was when the last-cited decision was rendered, and it therefore requires us to hold that the judgment may be reduced to $2,000 and costs.

It follows, therefore, that the determination of the Appellate Term, affirming the judgment of the City Court, should be reversed, and that the order denying the motion to reduce should be reversed, and the motion granted, and judgment ordered to be entered for $2,000 and costs, without costs to either party in this court. All concur.