TROUNSTINE v. BRITT et al.   (No. 5909.)

(Supreme Court, Appellate Division, First Department.   May 27, 1914.)

1. JUDGES (§ 3*)—NEW YORK CITY COURT—ELECTIONS—TERM OF JUSTICES.

Consolidation Act (Laws 1882, c. 410), which revised the laws relating to the city of New York, provides that the term of office of justices of the City Court shall be six years, that two justices shall be elected each odd year, and that any vacancy shall be filled by appointment by the Governor; the appointee holding the office until the commencement of the political year next succeeding the first annual election, after the happening of the vacancy, at which such officer could be by law elected. Const. art. 6, § 18, provides that all judicial officers, except as otherwise provided, shall be elected or appointed in such manner as the Legislature may direct. Article 12, § 3, provides that all elections of judicial officers of inferior local courts shall be held in odd-numbered years, and that the term of such officers shall expire at the end of an odd-numbered year. New York City Charter (Laws 1897, c. 378), as amended by Laws 1901, c. 466, continued the City Court as it previously existed; section 1346 increasing the term of justices from six to ten years. *Held* that, as the charter left the Consolidation Act in effect except as to the term, there could be no valid election of a justice of the City Court in an even-numbered year, for not only was this forbidden by the Consolidation Act, but the Constitution expressly prohibited the election of judicial officers of inferior courts, except in odd-numbered years, this being so though a de facto incumbent of the office of justice of the City Court was elected at an election improperly held in an even-numbered year, and his term under ordinary circumstances would expire in an even-numbered year.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 4–10; Dec. Dig. § 3.*]

2. JUDGES (§ 3*)—NEW YORK CITY COURT—ELECTIONS—CONSTITUTIONAL PROVISIONS.

Const. art. 12, § 3, declaring that all elections of judicial officers of inferior courts elected in any city shall be held in odd-numbered years, applies to justices of the City Court of New York City, for, as the article expressly applies to cities and villages, its effect cannot be restricted to offices provided for by the Constitution.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 4–10; Dec. Dig. § 3.*]

Appeal from Special Term, New York County.

Application by the State, on the relation of John Trounstine, for a writ of peremptory mandamus against J. Gabriel Britt and others, as custodians of primary records and as commissioners of elections,

and another, in which Francis B. Delahunty and others, not parties to the record, were allowed to intervene. From an order denying a peremptory writ, relator appeals. Order reversed, and motion granted.

The application was made for the purpose of requiring defendants and each of them to refrain in any manner, at the coming primary and general elections in 1914, from certifying to the existence of a vacancy in the office of, or certifying to the expiration of the term of office of, Joseph I. Green, now an incumbent of the office of Justice of the City Court of the city of New York, or calling for the election of his successor.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Emanuel Van Dernoot, of New York City, for appellant.

E. Crosby Kindleberger, of New York City, for respondents.

Herbert C. Smyth, of New York City, on behalf of Francis B. Delahunty, Edward B. La Fetra, and Richard C. Lynch, Justices of the City Court, who are not parties to the record, but intervene with the permission of the court.

James A. Foley, of New York City (Robert L. Luce, of New York City, on the brief), for Democratic County Committee of County of New York.

Frederick C. Tanner, of New York City, for Republican County Committee of County of New York.

Leonard M. Wallstein, of New York City, for County Committee of National Progressive Party.

INGRAHAM, P. J. The relator instituted this proceeding for the purpose of having a judicial determination as to whether the successor of Joseph I. Green, as a justice of the City Court of the city of New York, could be elected at the general election in 1914. No objection is taken to the nature of the proceeding, but all parties have appeared and desire a determination of that question. By permission of the court, counsel representing three other justices of the City Court, the Republican county committee of the county of New York, the Democratic county committee of the county of New York, and the county committee of the National Progressive Party, were allowed to submit briefs and were heard orally on the argument of this appeal. As it seems to be quite necessary that this question should be decided, we will, without passing upon the method adopted, determine the question presented.

The City Court of New York, as at present constituted, was apparently first established by chapter 71 of the Laws of 1819 by a reorganization of the Justice's Court in and for the city and county of New York, under the name of the Marine Court. Its jurisdiction was gradually increased, and, by chapter 26 of the Laws of 1883, its name was changed to the City Court, and its jurisdiction was then enlarged and regulated. See opinion of Clarke, J., in Lewkowicz v. Queen Aeroplane Co., 154 App. Div. 142, 138 N. Y. Supp. 983, affirmed 207 N. Y. 290, 100 N. E. 796. It is thus distinctively an inferior court of limited jurisdiction established by the Legislature and

subject to its regulation and control. By chapter 582 of the Laws of 1870, an increase of three additional judges was provided for, who were to be. elected at the general election to be held on the first Tuesday of May, 1870. They were to classify themselves by lot, so that one should hold office to and including the 31st of December, 1873, one until the 31st of December, 1875, and one until the 31st of December, 1877; and these three justices, with the three justices then in office, were to constitute the said court, and their term of office was to be six years.

[1, 2] By the Consolidation Act (chapter 410 of the Laws of 1882), which was a general revision of the laws relating to the city and county of New York, the general laws in relation to the then Marine Court of the city of New York were revised and re-enacted. By section 1205 of that act, the Marine Court of the city of New York was declared to be a court of record, and section 1206 provided that the term of office of the justices should be six years; that the justices in office when the act should take effect should continue therein until the expiration of the terms for which they were respectively elected; that two justices should be elected at the general election to be held in the year 1881, and the same number at the general election in each second year thereafter. It will be seen that it was there enacted that the justices of this court were to be elected in the odd-numbered years —two justices in 1881; two justices in 1883; and two justices in 1885. The section then provided: Any vacancy shall be filled by appointment by the Governor, and the person so appointed shall hold the office until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected. As, under the former provision of the section, no justice could be elected in an even-numbered year, it would seem to follow from this provision of the statute that the appointment by the Governor was to continue until the commencement of the political year next succeeding the first annual election in an odd-numbered year, and, taking this whole section together, I think it seems to indicate that the Legislature then intended that the election of these judges should be held in odd-numbered years and the appointee of the Governor should continue until the beginning of the year succeeding an annual election in such odd-numbered year. By chapter 36 of the Laws of 1883, the name of the Marine Court of the city of New York was changed to the City Court of the city of New York, and the laws relating to the Marine Court justices, clerks, and attachés thereof were continued in force and applied to the City Court.

The amended Constitution was adopted November 6, 1894, and came in force on the 1st day of January, 1895. It contained no reference to the City Court of New York, but by section 18 of article 6 of the Constitution it was provided that, "except as herein otherwise provided, all judicial officers shall be elected or appointed at such time and in such manner as the Legislature may direct." The Constitution also contained an additional provision in relation to the election of judicial officers of inferior local courts, contained in section 3 of article 12, and

which, of course, must be read in connection with the provisions of section 18 of article 6. It was there provided that:

"All elections of * * * judicial officers of inferior local courts, elected in any city or part of a city, and of county officers elected in the counties of New York and Kings, and in all counties whose boundaries are the same as those of a city, except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-numbered year, and the term of every such officer shall expire at the end of an odd-numbered year."

The Constitution then provides for the extension of the terms of certain officers elected before the 1st day of January, 1895, whose successors had not then been elected, and continues:

"The terms of office of all such officers, * * * which under existing laws would expire in an even-numbered year and before the end thereof, are abridged so as to expire at the end of the preceding year."

The meaning of these two provisions, read together, seems to be perfectly clear. Judicial officers were to be elected or appointed at such times and in such manner as the Legislature might direct, but the election of certain judicial officers specified in section 3 of article 12 was to be held on the Tuesday succeeding the first Monday of November in an odd-numbered year, and the term of every such officer was to expire at the end of an odd-numbered year. Where a vacancy was required to be filled, the Legislature had authority to provide for filling such a vacancy in an even-numbered year, but with that exception the provision was mandatory. Where there was no vacancy to be filled, there could be no election of one of these judicial officers in an even-numbered year, but the election was required to be held at the general election in an odd-numbered year, and, in case the term of the office to be filled would expire at the end of an even-numbered year, such term would expire at the end of the preceding odd-numbered year, in which year his successor was to be elected. And the provision of section 1206 of the Consolidation Act, to which attention has been called, fitted into this constitutional provision, for in that the Legislature had provided for the election of these justices in odd-numbered years, and in case of a vacancy had provided how that vacancy should be filled, namely, by appointment of the Governor, and the appointee should hold office until the end of the next odd-numbered year. It seems to me that, when this provision of the Constitution became effective, there could be no valid election of a justice of the City Court in an even-numbered year, and therefore, at any election in such year, all votes cast for a justice of the City Court were void and ineffective. The fundamental law of the state had provided in unmistakable terms that the election of these officers should be held on the Tuesday succeeding the first Monday of November in an odd-numbered year, and the term of every such officer should expire at the end of an odd-numbered year. And that, I think, would apply to the term of every officer where an election was required to permanently fill the office, whether the officer then in office held by election or appointment.

By the new charter (chapter 378 of the Laws of 1897, as amended by chapter 466 of the Laws of 1901, § 1345), the City Court was continued as it existed and was constituted prior to the 1st day of January,

1898. And by section 1346 the justices of the said City Court in office when the act took effect should continue to hold office until the expiration of their respective terms, but the successors of such justices should be elected and hold office for a period of ten years. That provision left the Consolidation Act, to which attention has been called, in full force, except in relation to the term of office, which by the charter seems to have been extended from six years to ten years. But there was nothing in the charter which changed the time and place for the election of such justices or the method of filling vacancies that existed. If a vacancy existed, it was to be filled by the Governor, the appointee to hold office until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected, and that election was the first general election in a succeeding odd-numbered year.

This, it seems to me, is the clear mandate of the Constitution and the statutes of this state in force which control the selection of justices of the City Court, and this is amply sustained by all of the authorities that have dealt with the construction of these constitutional provisions. In People ex rel. Ward v. Scheu, 167 N. Y. 292, 60 N. E. 650, the question presented was whether a vacancy existed in the office of commissioner of public works in the city of Buffalo. The charter of that city required such officer to be elected at a general election, but a vacancy in that office under the charter was to be filled by appointment by the mayor "until the 1st day of January after the next municipal election, at which election a commissioner shall be elected to fill the unexpired term of the elected commissioner whose office became vacant." And by another section of the charter the municipal and ward election were to be held in each odd-numbered year. In November, 1897, one Maher was elected as commissioner of public works for a full term of four years, or until December 31, 1901. Maher died in August, 1900, leaving a vacancy in the office, and in September the mayor appointed the defendant to the office made vacant by the death of Maher. At a general election held in November, 1900, candidates for this office were voted for by the electors, and the relator was elected to fill that vacancy, and he demanded possession of the office, which was refused, and the action then before the court was brought to recover that office. The relator contended that under section 5 of article 10 of the Constitution, which provides that the Legislature should provide for filling vacancies in office, and, in case of elective officers, no person appointed to fill a vacancy could hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy controlled, and that, as the appointee could fill only until the 1st day of January, 1901, the relator's election was valid. The court held, however, following the case of People ex rel. Hatfield v. Comstock, 78 N. Y. 356, that this prohibition applied only to officers provided for by the Constitution, as distinguished from those created by the Legislature, and, as this office was created by the Legislature and not by the Constitution itself, the provision of section 5 of article 10 of the Constitution did not apply; that as the Legislature had not provided for an

election to fill vacancies in such office except in municipal election, and municipal elections could only be held in the November of odd-numbered years, the relator had no claim to the office in dispute. The court then discussed section 3 of article 12 of the Constitution, but held that the words "except to fill vacancies" in that section were not mandatory but merely permissive and simply reserved to the Legislature the right to fill vacancies in elective offices in even-numbered years; but that the provision of this section of the Constitution did apply to the election for a municipal officer of the city of Buffalo, and that the fact that the relator was elected by a majority of the votes in the November election of 1900, an even-numbered year, gave him no title to the office.

The facts in relation to the office which Mr. Justice Green now occupies are as follows: In the general election in the year 1899, James M. Fitzsimons was duly elected a justice of the City Court for the full term of ten years; his term of office commencing on the 1st day of January, 1900. He died in the year 1904, and in July of that year the Governor of the state appointed Judge Palmieri to fill the vacancy caused by the death of Judge Fitzsimons. At a general election held in November, 1904, Mr. Justice Green received a majority of the votes cast for that office and entered the office on the 1st day of January, 1905, and has continued as a justice of the City Court from that time. Ten years after he took office would expire on the 31st day of December, 1914. He was not elected to fill the vacancy caused by the death of Judge Fitzsimons, because the Governor had filled that vacancy under the provisions of the Consolidation Act. He was elected as a successor of Judge Palmieri, who, under the provisions of section 1206 of the Consolidation Act, was to hold his position until the commencement of the political year next succeeding the first annual election after the happening of the vacancy at which such officer could be by law elected. And under the provisions of the charter (section 1346), when the successor of Judge Palmieri was elected, he was to be elected and hold office for the period of ten years. There was no provision of law which authorized the electors of the city of New York to elect a justice of the City Court of New York at the general election held in the year 1904. It was the duty of the electors to elect a justice of the City Court at the general election held in November, 1905, but that duty apparently was not performed, and no justice of the City Court was elected in that year. The mandatory provision of the Constitution requires that these justices of the City Court should be elected in an odd-numbered year, and therefore there could be no election in the year 1904, and there can be no election in the year 1914. It follows, therefore, that this application should be granted.

There is a claim made that this provision of section 3 of article 12 of the Constitution does not apply to justices of the City Court, but only applies to the offices provided for by the Constitution. But that, it seems to me, is plainly untenable. Article 12 expressly applies to cities and villages. The officers of such cities and villages are not provided for by the Constitution, except so far as this section provides when the elections of all city officers, including supervisors and

judicial officers of inferior local courts, elected in any city or part of a city, and county officers elected in the counties of New York and Kings, shall be held. The establishment of municipal offices is nowhere regulated by the Constitution, nor is the election of judicial officers of inferior local courts, except in some particular instances, by the Constitution, and the language used clearly contemplates that the election of all municipal or local officers, whether provided for in the Constitution or not, is to be governed by the provisions of this section. It would be clearly ineffective to accomplish the purpose for which this section was enacted to restrict it to officers whose election or appointment was expressly provided for by the Constitution, for all municipal officers and most of the local judicial officers would not be included if the provision should be held to apply only to officers whose election or appointment was provided for by the Constitution. The provision is to effect the election of all city officers, including supervisors and judicial officers of inferior local courts elected in any city or part of a city. That the City Court is an inferior local court, the justices of which are elected in part of the city of New York, is clear, and it is equally clear that this constitutional provision applies to the election of these officers. As the only question presented to the court on this appeal is as to whether or not an election can be held for a successor to Mr. Justice Green at the election in 1914 (and if I am right in this opinion no such election can be held), it is not necessary to discuss the question as to the situation of Mr. Justice Green and whether he has any title to the office that he now holds. He is an actual de facto judge, exercising the duties of the office, and has been so for nearly ten years. There is no one who has a better title to the office then he has, and no one has questioned his right to perform its duties. The duty does not devolve upon us in this proceeding to express an opinion as to his right to the office or power to perform its judicial functions, and upon that question, therefore, we express no opinion.

It follows that the order appealed from must be reversed, and the motion granted, without costs. All concur.