Rudolph W. Lotz, Respondent, *v*. Standard Vulcanite Pan Company, Appellant.

(Supreme Court, Appellate Term, Second Department, December, 1917.)

Jurisdiction — meaning of " any equity jurisdiction " — depositions — constitutional law — Muncipal Court of city of New York — Municipal Court Code, § 27(4) — Laws of 1916, chap. 610.

The term " any equity jurisdiction " as used in section 18 of article VI of the Constitution of 1894 must be construed to mean jurisdiction of proceedings and remedies which were recognized at the time of the adoption of said Constitution as distinctly equitable in their nature, which an examination of a party before trial, at that time, was not.

Section 27 (4) of the Municipal Court Code, added by chapter 610 of the Laws of 1916, and which provides: " The deposition of a party to an action in this court or of a person who expects to be a party to an action about to be brought in this court may be taken at his own instance or at the instance of an adverse party, or by a co-plaintiff or co-defendant at any time before or during the trial, in the same manner as such depositions are taken under the provisions of law applicable to like cases in the supreme court," does not attempt to confer upon the Municipal Court of the city of New York " any equity jurisdiction " and is not in conflict with the constitutional provision above mentioned.

Appeal by defendant from an order of the Municipal Court of the city of New York, borough of Brooklyn, fourth district, bearing date October 22, 1917, denying defendant's motion to vacate an order made by a justice of said court, and dated September 13, 1917, directing the examination of defendant as an adverse party before trial.

Louis J. Halbert, for appellant.

Louis A. Jaffer, for respondent.

BENEDICT, J.   The order appealed from was entered on consent of the appellant's attorneys and the appeal might be dismissed on that ground were it not that the jurisdiction of a justice of the Municipal Court to direct the examination of a party before trial is challenged; and the consent of the party or his attorneys cannot, of course, confer jurisdiction of the subject matter.   Although the order appealed from is not separately appealable it involves a mooted question constantly arising and concerning which I deem it proper to express my view thereon.

The examination before trial of a party or expected party to an action in the Municipal Court is expressly authorized by subdivision 4 of section 27 of the Municipal Court Code, added by Laws of 1916, chapter 610 (in effect September 1, 1916), which reads as follows:

" 4.  The deposition of a party to an action in this court or of a person who expects to be a party to an action about to be brought in this court may be taken at his own instance or at the instance of an adverse party, or by a co-plaintiff or co-defendant at any time before or during the trial, in the same manner as such depositions are taken under the provisions of law applicable to like cases in the supreme court."

It is claimed by appellant that this enactment is violative of section 18 of article 6 of the Constitution of the state of New York, which among other things forbids the legislature to confer upon any inferior or local court of its own creation any equity jurisdiction.   It is urged that the examination of an adverse party before trial is merely a substitute for the former equitable remedy of the bill of discovery and hence that the amendment of 1916 was an attempt to confer equity jurisdiction on the Municipal Court.   This contention is opposed by the respondent and each side has urged its position upon us in the briefs submitted.

The question which is involved requires an examination into the history of the right to examine an adverse party before trial. Under the system of jurisprudence prevailing in this state prior to the Constitution of 1846 the only means by which a party could obtain an examination of the opposite party with respect to the matters in issue in an action at law was by means of a separate action brought upon a bill of discovery in equity. A party was not a competent witness in an action in a court of common law and could not be examined therein either at or before the trial (except in the single case of a demand transferred in violation of law. 2 R. S. 288, 289, § 75 *et seq.*) The first legislative step to relieve this condition was taken by the passage of chapter 462 of the Laws of 1847, section 1 of which read in part as follows: "Any party in any civil suit or proceeding either in law or equity, had before any court or officer, may require any adverse party * * * to give testimony under oath in such suit or proceeding; and such adverse party may be examined orally or under à commission, in the same manner as persons not parties, * * * or he may be examined by a commission or conditionally, or his testimony perpetuated in the same manner as any competent witness."

Various administrative provisions are contained in the subsequent sections of the act. Chapter VI of title XII of part II of the Code of Procedure of 1848 contained the first provisions for the examination of a party before trial in the action to which he was such party. Section 343 (afterwards renumbered as section 389 in the amended Code of 1849) read as follows: " No action to obtain discovery under oath, in aid of the prosecution or defense of another action, shall be allowed, nor shall any examination of a party be had,

on behalf of the adverse party, except in the manner prescribed by this chapter.''

Section 344 (afterwards renumbered as section 390) provided for an examination at the trial, following somewhat the language of the act of 1847 above referred to. Section 345 (afterwards renumbered as section 391) provided that the examination might be had before trial if desired. This section as contained in the amended Code of 1849 read in part as follows:

'' Section 391. The examination, instead of being had at the trial as provided in the last section, may be had, at any time before the trial, at the option of the party claiming it, before a judge of the court or a county judge, on a previous notice to the party to be examined, and any other adverse party, of at least five days, unless, for good cause shown, the judge order otherwise. * * *.''

By subdivision 4 of section 2 of chapter 380 of the Laws of 1848 the provisions of the Code of Procedure relative to taking testimony of an adverse party at or before the trial were made applicable to future proceedings in civil suits, whether at law or in equity, pending when that Code took effect in all courts of civil jurisdiction in the state. But so far as future actions were concerned the provisions of title XII of the Code of Procedure of 1848 were by section 8 thereof made applicable to actions in the Supreme Court, the County Courts, the Superior Court of the city of New York, the Court of Common Pleas for the City and County of New York, the Mayor's Courts of the cities of Albany, Hudson, Troy and Rochester, and the Recorders' Courts of the cities of Buffalo and Utica, and the same provision was continued by section 8 of the amended Code of 1849. In the note to chapter VI of title XII of part II of the Code of Procedure the commissioners said as follows:

" The provisions contained in this chapter, we have considered so important to the success of our system, that from the first we have contemplated their introduction. Meantime the legislature, at their late session, have passed an act upon the subject. [Evidently referring to the act of 1847 above mentioned.] That act, however, contemplates the examination at the trial only. [This is not quite true, for it provided also for the taking of the testimony of a party conditionally or by commission or to perpetuate his testimony.] We think it important to extend it so as to permit the examination to take place before the trial, at the option of the party.

" Before the act of the last session, whenever a party sought a discovery from his adversary, he was obliged to file a bill in equity, called a bill of discovery. This proceeding was dilatory and expensive. If the examination be had at all, it may be had in the same action as well as in another. That it should be had in some form, our law has always admitted. The difficulty was, that the process to obtain it was oppressive, and often ineffectual."

The commissioners also discussed the question whether such an examination should be taken upon written interrogatories or *viva voce,* and decided in favor of the latter method, referring to the act of 1847 as evidence that the people preferred such method to the ancient chancery practice of taking testimony by commission on written interrogatories administered in private rather than in open court. In this connection it is interesting to note that a bill was introduced into the legislature of 1821 to permit the taking of testimony in chancery suits *ore tenus* entitled "An act to alter the mode of taking evidence in the court of chancery." See bill No. 42 in senate, January 27, 1821, Senate Documents, 1821. The change proposed by this

bill was regarded as of so great consequence that the senate by resolution submitted to the chancellor for his consideration the proposed bill, requesting his opinion thereon. Chancellor Kent on February 5, 1821, submitted his opinion to the senate, and in the course of this opinion, which reviewed the history of the manner of taking evidence in the Court of Chancery, he reached the conclusion that it was inadvisable that the bill should be passed. See Senate Documents, 1821. It may be observed that notwithstanding the chancellor's objection as thus expressed to the general principle of examining witnesses orally he held that the chancellor possessed such power when he chose to exercise it. See *Barrow* v. *Rhinelander,* 1 Johns. Ch. 550, 559. Apparently the only effect of the agitation in the legislature of 1821 was the passage in the next year of an act (chapter 272 of the Laws of 1822) authorizing the taking of testimony in the Court of Chancery in the same manner as formerly except that it might be taken before a sole commissioner instead of before three commissioners or one of the examiners in chancery.

To return to the matter immediately under consideration, the legislature in 1860 entirely lifted the ban which had theretofore prevented parties from being called as witnesses, subject only to the condition that they could not in certain cases testify to personal transactions with deceased persons. Laws of 1860, chap. 459, § 12, amdg. Code Pro. § 399. Thereafter the provisions of chapter VI of title XII, part II of the Code were useful only in cases where it was desired to examine a party before trial, or perhaps to take his deposition during the course of a trial or to take his deposition conditionally, or by commission or to perpetuate his testimony. The Code of Civil Procedure in sections 870 *et seq.* consolidated the provisions relative to the examination of parties before trial with pro-

Appellate Term, Second Department, December, 1917.    [Vol. 102.

visions for the taking within the state of the depositions of witnesses not parties before trial. The changes made by the Code of Civil Procedure were, however, mainly administrative and did not affect substantially the right to have the examination of a party before trial.

The authorities are not in harmony on the question whether the jurisdiction of the Supreme Court to direct the examination of a party before trial is inherent or whether it is purely statutory. Unquestionably the Supreme Court, as the successor of the Court of Chancery and by virtue of the provision of the Constitution of 1846 giving it general jurisdiction in law and equity, succeeded to the power of the Court of Chancery or of the chancellor to entertain a bill of discovery in aid of a common-law action; and the authorities have generally recognized that the provisions of the Code of Procedure and the Code of Civil Procedure for an examination of the adverse party before trial constituted a substitute for the bill of discovery. Thus in *Glenney* v. *Stedwell*, 64 N. Y. 120, 122, Judge Folger, after referring to the equitable practice of bill of discovery, said: "The commissioners who reported the Code of Procedure, and the legislature which enacted it, found the Supreme Court in possession of this jurisdiction. It is not to be supposed that so great a change was intended to be made, as to abolish this power and to take away this right and means of relief to suitors, unless there is found clear indication of it in the report of the commissioners, or an unmistakable intention in the terms of the enactment. * * *.

"We find that in reporting the provisions of the Code for the examination of parties to actions, which prohibit the bringing of a bill of discovery in one action in aid of another action, the commissioners meant them to be a means of accomplishing, substantially, the same

ends which were attained in a court of equity in the exercise of its jurisdiction to compel a discovery. (Comrs. 1st Report, p. 244.) Nor do the sections reported and adopted prohibit the essential relief before attained. They interdict the mode of relief, as well might be, after the distinctions were removed between a court of law and one of equity, and the commingling in one of the powers and jurisdictions of the two kinds of courts. They might well then provide that, in the same action, with whatever subject-matter it dealt, discovery should be afforded and relief granted.''

The question involved in that case was whether an examination of a defendant could be had to enable the plaintiff to frame his complaint, and the learned judge, after examining particularly the several provisions of the act, proceeds as follows: '' It is doubtful whether the testimony of one who is likely to be a party to an action not yet commenced, may be perpetuated under the Revised Statutes above cited, for they deal only with witnesses, and not with a party to the action, either real or prospective. We express no decided opinion as to this. We do hold that but for the three hundred and ninety-first section [of the Code of Procedure as amended in 1849], construed as we construe it, a party to an action cannot be examined after process served, and before complaint served. The omission to provide, by the Code, for the perpetuation of the testimony of a prospective party, before suit commenced, for the benefit of one who expects to be a party to a suit about to be commenced, if it exists, is a failure to fully carry out the avowed purpose of the codifiers, to make the parties to actions the prime and principal source of the testimony upon which they are to be determined. (See Report, as above cited.) And the omission to provide for the examination of a party,

before complaint served, would be another failure to attain fully that purpose; and also, a failure in the avowed purpose to provide an ample substitute for the former bill of discovery.

"Apart from the argument to be had from this avowed purpose, the language of the three hundred and ninety-first section, ' at any time before trial,' is broad enough to authorize an examination, at once, after the service of process. There is reason to conclude that so the legislature meant it; for thus is harmonized the purpose of giving to a court of law the power to do that which a court of equity could have done by a separate action in aid of one at law, with the other purpose of abolishing the wearisome machinery of the Court of Chancery, and of simplifying and shortening the methods of procedure. The substance is retained, and the process is more ready." (See note to this case in 1 Abb. N. C. 332.)

In *King* v. *Leighton,* 58 N. Y. 383, the Court of Appeals in discussing the provisions of the Code of Procedure relative to discovery of documents, which was one of the forms of relief which might have been obtained by the bill of discovery in equity, said, by Johnson, J.: " The provisions of the Revised Statutes in respect to the discovery of books and papers were introduced to remedy the defects of power in common-law courts over that subject. Originally confined to the Supreme Court, they were extended to certain other courts by chapter 38 of the Laws of 1841; but they neither conferred or controlled the power of the Court of Chancery. That court acted by virtue of its inherent jurisdiction over discovery and framed its own rules, fixed the limits within which it would proceed and from time to time adjusted its procedure to meet the requirements of justice."

Subsequent authorities have recognized the doctrine

of *Glenney* v. *Stedwell, supra,* that the provisions of the Code relative to examination of parties before trial constituted a substitute for the bill of discovery. *Greer* v. *Allen,* 15 Hun, 432, 434; *Sweeney* v. *Sturgis,* 24 id. 162, 165; *Adams* v. *Cavanaugh,* 37 id. 232, 234; *Matter of Darling,* 31 Misc. Rep. 543, 544; *Phœnix* v. *Dupuy,* 2 Abb. N. C. 146, 152, New York Common Pleas, per Daly, Ch. J., with whom J. F. Daly and Larremore, JJ., concurred; and *Kinney* v. *Roberts & Co.,* 26 Hun, 166, 168–169.

On the other hand we have a line of cases of varying degrees of appositeness and cogency which hold that the power of the courts, including the Supreme Court, to order an examination of a party before trial is purely statutory. These authorities seem to rest upon the dictum in *Heishon* v. *Knickerbocker Life Ins. Co.,* 77 N. Y. 278, where the Court of Appeals, in reviewing an order of the General Term of the Superior Court of the city of New York, said, *per curiam:* " The right of the plaintiff to have the examination of these two defendants is strictly statutory. Independent of the statute, there is no such right. The court has no inherent or common law power to order the examination." See also *Wiechers* v. *New Home Sewing Machine Co.,* 38 App. Div. 1, 2; *Matter of Schlotterer,* 105 id. 115, 118; *Matter of Gains,* 15 Misc. Rep. 75, 77; *Bowe* v. *Brunnbauer,* 13 id. 631, 632; *Boskowitz* v. *Sulzbacher,* 121 App. Div. 878, 883; *Balcom* v. *Adams,* 15 Civ. Pro. 198, 200; *Adams* v. *Cavanaugh,* 37 Hun, 232, 235; *Mitchell* v. *Schroeder,* 94 Misc. Rep. 270, 280.

The authorities last cited so far as they relate to the Supreme Court would seem to indicate that the inherent power of the Supreme Court, as the successor of the Court of Chancery, to grant discovery, conferred by the Constitution of 1846 and preserved by the Constitution of 1894, has not been given sufficient

# 78    LOTZ v. STANDARD VULCANITE PAN CO.

weight by some judges. Doubtless the power of the Superior Court of the city of New York, whose jurisdiction was under consideration in *Heishon* v. *Knickerbocker Life Ins. Co., supra,* was statutory in origin, and in this respect the decision of the Court of Appeals was doubtless correct; but the broad language above quoted from that case has been misapplied in holding that the jurisdiction of the Supreme Court in discovery proceedings under the Codes is derived from the statute. The Supreme Court has been far too ready in many instances to bow before legislative enactments which take away or limit its inherent or constitutional jurisdiction, and this I think is one instance in point.

Prior to the enactment of chapter 610 of the Laws of 1916 permitting the examination of parties before trial in the Municipal Court the question was raised whether that court had power to permit such an examination after it was made a court of record by the enactment of the Municipal Court Code. In *Mitchell* v. *Schroeder, supra,* this question was elaborately discussed by Mr. Justice Lehman in the Appellate Term, first department, and the conclusion was reached that the Municipal Court had no such power because, although sections 870 *et seq.* of the Code of Civil Procedure were by their terms applicable to courts of record, yet, as those sections conferred a new statutory jurisdiction upon the Supreme Court and were not merely regulative of an inherent jurisdiction, it could not be deemed that the legislature in making the Municipal Court a court of record intended to confer upon it such jurisdiction. The doctrine of that case was approved by the Appellate Division in the second department in *Scheidlinger* v. *Silber,* 174 App. Div. 887.

Nevertheless, for the reasons above stated, I cannot agree with the doctrine that the power of the

Supreme Court in this class of proceedings is statutory, or that the provisions or the Codes relative to examinations of adverse parties before trial conferred any new jurisdiction upon the Supreme Court. Rather I think they were regulative of an inherent jurisdiction already existing.

It is not necessary to hold, however, that at the time of the adoption of the Constitution of 1894 the jurisdiction of an application for the examination of a party before trial was an equitable jurisdiction. As has already been shown, the Code of Procedure made this proceeding available indiscriminately in equity and common-law actions, and extended it to other courts besides the Supreme Court including those which had either a limited equitable jurisdiction or none at all. The statutory provisions allowing it were in the Code of Civil Procedure commingled with others relating to taking the depositions of witnesses not parties, to perpetuating testimony, etc. The proceeding thus became an interlocutory proceeding available in every sort of action and within the jurisdiction of all courts of record. Long prior to the Constitution of 1894, it had entirely lost its peculiar character as an equitable remedy.

Section 18 of article VI of the Constitution of 1894, so far as material, reads as follows: " Inferior local courts of civil and criminal jurisdiction may be established by the Legislature, but no inferior local court hereafter created shall be a court of record. The Legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article."

The provisions of section 18 forbidding the legislature to make inferior local courts thereafter created

courts of record and limiting its powers to confer
jurisdiction upon inferior or local courts of its own
creation were new, there having been no corresponding
provisions in any of the previous Constitutions. The
reasons for the insertion of this provision were well
expressed by Elihu Root, chairman of the judiciary
committee of the Constitutional Convention of 1894, as
quoted in the dissenting opinion of Mr. Justice Page
in *Lewkowicz* v. *Queen Aeroplane Co.*, 77 Misc. Rep.
151, 167, as follows: " ' We have done one other thing
to which I beg to call your attention. That is this:
there has been a constant process in this state of
enlarging of the jurisdiction of local and inferior tri-
bunals. That is the way in which we found ourselves
confronting the situation with four Superior City
Courts which had been gradually built up, one of them
during two hundred years, the others during much
shorter periods, by the constant addition of jurisdic-
tion, until each one had equal jurisdiction with the
Supreme Court within the locality in which it was
situated. * * * so, while we destroy, by consolidat-
ing all these tribunals which have grown to be equal
in jurisdiction to the Supreme Court, and leave only
one Supreme Court, we prohibit the legislature from
ever enlarging the jurisdiction of local and inferior
courts, so that they shall exceed, as to the courts now
existing, the jurisdiction they now have, and as to any
courts they may hereafter create, the jurisdiction of
the County Courts. We thus keep down to the level
of the County Courts, local tribunals and useful tri-
bunals, adapted to the performance of specific func-
tions, all courts except the one Supreme Court; and
we do that, not alone for symmetry, not alone to avoid
the inconveniences to which I have referred, of build-
ing up these rivals to the Supreme Court, but we do
it because it gives effect to a principle, and this is the

principle. The proper trial of small causes is just as important as the trial of large causes. Small cases are just as important to those who have them as large causes to wealthier men * * *. When a court is organized for the trial of small causes it ought to attend to its business and try to do it just as well as any other court tries a million dollar cause. But if you enlarge the jurisdiction and give it million dollar causes to try, it will never attend to the little causes, and you will spoil your court for the trial of small causes, and merely add another court to those which try large ones. We propose by this inhibition upon the legislature to keep a system of courts in this state which will attend to the proper function of properly trying small causes in which the great body of people are more interested than they are in the large ones.' Revised Record, Const. Conv. of 1894, vol. 2, p. 901.''

The two prevailing opinions in that case did not receive the approval either of the Appellate Division or of the Court of Appeals. 154 App. Div. 142; 207 N. Y. 290. The Appellate Division, in a unanimous opinion of that court, read by Mr. Justice Clarke, also quoted the foregoing remarks of Mr. Root.

There is nothing inconsistent with the purpose of section 18 of article VI of the Constitution of 1894, as thus explained, in holding that the Municipal Court might be invested with power to entertain an application for the examination before trial of a party to a cause of which that court has jurisdiction. In view of the long use of such procedure in both common-law and equity actions, both in courts having equity jurisdiction and courts not having it, there is no reason to suppose that the framers of the Constitution of 1894 intended to forbid the legislature to confer upon inferior courts the right to exercise such power as auxiliary to their general jurisdiction. I think the

term " any equity jurisdiction " as used in section 18 aforesaid must be construed to mean jurisdiction of proceedings and remedies which were recognized at the time of the adoption of the Constitution of 1894 as distinctly equitable in their nature, which, as already shown, was not the case with the interlocutory and auxiliary proceeding for the examination of a party before trial at that time.

For these reasons chapter 610 of the Laws of 1916 does not in my opinion attempt to confer upon the Municipal Court any equity jurisdiction and therefore is not in conflict with the provisions of section 18 of article VI of the Constitution.

In view of these considerations, it is evident that the order appealed from was right; and, had it been an appealable order, it would be affirmed; but, since it is not reviewable upon a separate appeal, we shall have to dismiss the appeal, with ten dollars costs.

Clark and Callaghan, JJ., concur in result.

Appeal dismissed, with costs.